**Barney McINTYRE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–483A137.**

Court of Appeals of Indiana, Second District.

Feb. 23, 1984.

Rehearing Denied April 4, 1984.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Judge (Writing by Designation).

## STATEMENT OF THE CASE

Barney McIntyre appeals his convictions of two counts of child molesting [1] as Class B felonies, following a trial by jury. He was sentenced to concurrent terms of ten years on each count.[2] Count I charged him with having sexual intercourse with a child under twelve, and Count II charged him with deviate sexual conduct [3] with a child under twelve. We reverse and remand for a new trial because of the trial court's refusal to allow legitimate cross-examination of the alleged victim.

## FACTS

McIntyre had sexual intercourse with his eleven year old granddaughter on several occasions and also caused her to perform fellatio upon him. These facts were established by the testimony of the granddaugh-

---

1. IND.CODE § 35-42-4-3(a) provides in relevant part: "A person who, with a child under twelve (12) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony ...."

2. The presumptive sentence for Class B felonies is ten (10) years. IND.CODE § 35-50-2-5.

3. IND.CODE § 35-41-1-2 defines "deviate sexual conduct" as "an act of sexual gratification involving a sex organ of one person and the mouth or anus of another person". (This section was repealed in 1983 and reenacted as IND.CODE § 35-41-1-9).

ter and by her statement to the police which was admitted into evidence.

When called as a witness at the trial, the granddaughter refused to testify. Out of the presence of the jury, the trial judge advised the granddaughter that if she refused to testify she would be held in contempt and jailed until she agreed to testify. She also was so advised by her own attorney. The trial was recessed until the next day to allow the granddaughter to think about her recalcitrance and the possibility of punishment. Upon return to court, the granddaughter testified to the acts which form the bases for the charges.

Other facts are stated in our discussion of the issues.

## THE ISSUES

The issues which we are required to decide [4] may be stated as follows:

1. Was it error for the trial court to coerce the granddaughter to testify by threatening punishment for contempt for refusal?

2. Was it reversible error for the trial court to refuse to permit cross-examination of the granddaughter to show she refused to testify until threatened with punishment for contempt?

3. Did the trial court err in granting the state's motion for continuance for absence of witnesses whose names were not endorsed on the information?

4. Did the trial court err in denying McIntyre's motion to dismiss?

## DISCUSSION AND DECISION

*Issue One*

McIntyre claims it was error to coerce the granddaughter into testifying by threatening to jail her for contempt until such time as she did testify. We disagree.

■ Absent a claim of privilege, a witness's refusal to testify constitutes a contempt. *Bryant v. State*, (1971) 256 Ind. 587, 271 N.E.2d 127; 17 Am.Jur.2d *Con-*

*tempt* § 29 (1964). *See also, Aguilar v. State*, (1981) Ind.App., 416 N.E.2d 887, *trans. denied*. Whether the trial court was correct in informing the granddaughter she could be incarcerated until she decided to testify we need not decide. In *Bryant*, the witness was fined $500, given a three month's sentence for contempt, and in *Aguilar*, the recalcitrant witness was found to be in direct contempt. The issue is not whether the court was correct in its opinion it could put the granddaughter in jail until she elected to testify, but is whether such coercion deprived McIntyre of a fair trial. It did not. As our supreme court observed in *Bryant*:

"We, therefore hold the trial court did not err in requiring the witness under penalty of contempt to answer the questions of the prosecuting attorney and that such coercion of the witness on the part of the trial court did not deprive appellant of a fair trial".

256 Ind. at 591, 271 N.E.2d at 130.

*Bryant*, significantly, is an incest case where the prosecuting witness was the fifteen year old stepdaughter of the defendant and refused to testify against him until found in contempt. *Bryant* is controlling on this issue and no error is shown.

*Issue Two*

■ The most important issue in this case, and the one upon which we reverse, is whether it was reversible error for the court to sustain the state's objection and to refuse to permit McIntyre's counsel to cross-examine the granddaughter concerning the fact that she testified only after threatened punishment for contempt. We hold this was denial of effective cross-examination and was reversible error.

■ Generally, the scope of cross-examination rests within the discretion of the trial court, and reversal will be ordered only for abuse of that discretion. *Davis v. State*, (1983) Ind., 456 N.E.2d 405. The trial court has broad discretion in determining the permissible scope of cross-examina-

---

**4.** McIntyre raises other issues pertaining to admissibility of evidence, jury instructions, and credibility of witnesses which we do not consider it necessary to determine in this appeal.

tion to test the credibility of a witness. *Gaston v. State,* (1983) Ind.App. 451 N.E.2d 360, *trans. denied.* An actual infringement of cross-examination must be shown in order to establish an abuse of discretion by the trial court in regulating cross-examination in a criminal prosecution. *Pfefferkorn v. State,* (1980) Ind.App., 413 N.E.2d 1088.

■ However, the trial court's exercise of discretion in regulating the scope of cross-examination must be consistent with due process. *Higginbotham v. State,* (1981) Ind.App., 427 N.E.2d 896; *Haeger v. State,* (1971) 181 Ind.App. 5, 390 N.E.2d 239. A fair trial requires that the defendant be granted full, adequate, and effective cross-examination. *Higginbotham; Haeger.* Any doubt concerning the legitimacy of the cross-examination must be resolved in favor of the questioner. *Sears v. State,* (1972) 258 Ind. 561, 282 N.E.2d 807; *Higginbotham.*

In *Davis v. Alaska,* (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, the Supreme Court of the United States held it was reversible error to refuse to allow the defendant to cross-examine the key prosecution witness to show he was on probation following an adjudication of juvenile delinquency for burglary. The court said such cross-examination might show, or at least permit argument that the witness made a hasty identification of the accused to shift suspicion away from himself. The court, speaking through the Chief Justice, stated:

> "Cross-examination is the principal means by which a witness and the truth of his testimony are tested .... We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. (Citations omitted).

> "In the instant case, defense counsel sought to show the existence of possible prejudice of [the witness], causing him to make a faulty initial identification of petitioner, which in turn could have affected his later in-court identification of petitioner.

> "We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that *the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment* as to weight to place on [the witness's] testimony which provided 'a crucial link in the proof ... of petitioner's act.' (Citation omitted)"

415 U.S. at 316–17, 94 S.Ct. at 1110–11, 39 L.Ed.2d at 353–54 (Emphasis supplied).

■ It is clear that cross-examination to show that a witness is testifying under threat of criminal prosecution or under promise of leniency is proper to show possible bias, prejudice, or motive in testifying and is relevant to a determination of the credibility of the witness and reliability of his testimony. 81 Am.Jur.2d *Witnesses* § 560 (1976). Likewise, a trial judge may not preclude cross-examination as to pending criminal charges against a prosecution witness. *Commonwealth v. Hogan,* (1979) 379 Mass. 190, 396 N.E.2d 978.

■ Our supreme court in *Newman v. State,* (1975) 263 Ind. 569, 334 N.E.2d 684, held that non-disclosure by the prosecutor of evidence of an agreement of leniency made with an alleged accomplice who testified as a prosecution witness was reversible error. The court in *Newman* stated that the jury should be apprised of such influence upon the witness in order to evaluate his testimony and judge his credibility. Thus, it would seem that if a prosecution witness, particularly one without whose testimony the state's case must fail, is testifying under any threats, promises of leniency, duress, or coercion of any kind, such fact must be revealed to the jury. There can be no doubt that cross-examination of the witness concerning such coercion is a proper and acceptable method of disclosure.

Here, the granddaughter refused to testify, and did not testify until after she was threatened with incarceration for contempt.

We recognize that here, as in *Bryant,* there was no evidence that the trial judge indicated or implied that the granddaughter had to testify in a certain manner.[5] However, the fact remains that she would not and did not testify until after she had been threatened with punishment for contempt. We believe the jury, had those facts been revealed, might have inferred that the reason for the granddaughter's reluctance to testify was that her prior statements were untrue. Certainly, McIntyre had a right to establish a record from which he could make that argument.

■ On the other hand, the jury might have concluded that the granddaughter's reluctance to testify came from a desire to protect her grandfather from punishment or from a sense of shame at having been involved in the degrading acts alleged. In fact, any damage to her credibility resulting from the disclosure of her refusal to testify and the threatened contempt action may have been overcome by her prior consistent statement to the police, and, in the eye of the jury she may have been fully rehabilitated thereby. The point is, McIntyre had a right to pursue a line of cross-examination, within reasonable limitations, showing her reluctance to testify and the coercive action of the trial court. We may not speculate as to which conclusion the jury might have reached. *Davis v. Alaska.* We further agree that the fact of coercion by threatened contempt did not render the granddaughter's testimony inherently unreliable and insufficient to support a conviction. *Bryant.* What we do hold is that the trial court's refusal to allow any cross-examination of the granddaughter along those lines did not comport with due process and deprived McIntyre of the right of effective cross-examination of a crucial state witness. Such action by the trial court was reversible error.

## Issue Three

McIntyre claims it was error for the trial court to grant the state's motion for a continuance based upon the unavailability of witnesses whose names were not endorsed in the information. He bases this contention on IND.CODE § 35–3.1–1–2(c) which provides that no continuance shall be granted for absence of a witness whose name is not endorsed on the indictment or information.

However, in *Akins v. State,* (1981) Ind., 429 N.E.2d 232, our supreme court held it was not reversible error to grant a state's motion for continuance for absence of a witness whose name was not endorsed on the indictment where the defendant was fully informed concerning the witness and her anticipated testimony and had ample time thereafter to prepare for trial.

■ Here, the absent witnesses were the granddaughter, the victim of the crimes charged, and her brother, an alleged victim of similar crimes charged against the grandmother, Mr. McIntyre's wife, in a separate count of the information. Surely, McIntyre cannot claim any surprise upon learning the state intended to call the alleged victims as witnesses. As the state aptly observes, "it would not require in-depth meditation to reach the conclusion that the state would be calling the victims in attempting to prove the commission of the offenses ..." Appellee's brief at 6. Further, the record shows that the state was ordered to furnish the defense with a list of all witnesses and copies of their written statements and summaries of any oral statements. Record at 39. McIntyre makes no claim of noncompliance with this discovery order. As in *Akins,* we believe McIntyre has not shown any prejudice resulting from the granting of the state's motion for a continuance.

## Issue Four

■ McIntyre filed a motion to dismiss on August 11, 1983, which was denied by the trial court. One of the grounds for dismissal asserted in that motion was that on May 1, 1981, the prosecuting attorney

---

**5.** *Bryant* is silent as to whether the witness was cross-examined regarding her refusal to testify and that she testified only after being held in contempt.

served his attorney with a copy of a motion to dismiss stating as grounds therefore that "the victims moved out of the jurisdiction [and] refuse to prosecute". Record at 82. This motion was never filed with the court, consequently the prosecution was not dismissed. Later, in July, 1981, the state requested a trial date. McIntyre cries "foul" because, relying upon the copy of the dismissal served upon him, he thought the case had been dismissed. He claims he is entitled to a dismissal. We do not agree.

Although we find the actions of the prosecutor in serving a copy of a motion to dismiss on McIntyre and, then, never advising him the motion was not filed, to be reprehensible, it still was the duty of McIntyre's counsel to monitor his case. *In the Matter of Sekerez,* (1984) Ind., 458 N.E.2d 229; *Ed Martin Ford Co., Inc. v. Martin,* (1977) 173 Ind.App. 428, 363 N.E.2d 1292. The case was not tried until March, 1982, so McIntyre had ample time to prepare for trial.

McIntyre also argues in his brief he was not brought to trial within one year and is, therefore, entitled to discharge under Indiana Rules of Procedure, Criminal Rule 4(C). However, McIntyre never filed a motion for discharge under C.R. 4(C) in the trial court, and did not claim violation of that rule in his motion to correct errors. He may not argue violation of C.R. 4(C) on appeal. In addition, the record reveals that McIntyre filed a motion for a continuance on October 9, 1981, which was granted and the trial date was continued until March 2, 1982. Record at 90. He made no objection to the March 2, 1982, trial date. Under such circumstances, he cannot claim the benefits of C.R. 4(C).

For the reasons indicated, we reverse the judgment and remand for a new trial.

BUCHANAN, C.J., and SHIELDS, J., concur.