Rockingham
No. 91-539

### THE STATE OF NEW HAMPSHIRE

v.

### KENNETH FITZGERALD

March 30, 1993

*John P. Arnold,* attorney general (*Janice K. Rundles,* assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices,* of Concord (*Mark L. Sisti* and *Jonathan R. Saxe* on the brief, and *Mr. Sisti* orally), for the defendant.

BROCK, C.J. The defendant, Kenneth Fitzgerald, was indicted on one count of negligent homicide stemming from a motor vehicle accident. The Superior Court (*Gray,* J.) dismissed the indictment on double jeopardy grounds, deciding that the defendant had already been prosecuted for his conduct when he was found guilty of failing to stop at a red light, a traffic violation under RSA 265:2 and RSA 265:10. On appeal, the State argues that a conviction of a traffic violation is not a criminal prosecution, and therefore double jeopardy protections do not apply. We reverse.

On February 5, 1990, the defendant's motor vehicle collided with another automobile at the intersection of Routes 51 and 88 in Exeter. As a result of injuries sustained in the collision, Joan E. Ellis, the driver of the second automobile, died on February 12. On March 14, the defendant was charged with failing to stop for a traffic light, in violation of RSA 265:10 of the motor vehicle rules of the road. On May 31, the defendant pleaded *nolo contendere* in Exeter District Court, was found guilty, and was ordered to pay a sixty dollar fine and a nine dollar penalty assessment.

On June 25, 1990, the Rockingham County Grand Jury indicted the defendant for negligent homicide, under RSA 630:3, I (1986 & Supp. 1990) of the Criminal Code. The defendant moved to dismiss the indictment on the ground that the negligent homicide prosecu-

tion was prohibited by federal and State double jeopardy protections because he had already been found guilty of the red light violation. The State objected, arguing that a violation under the motor vehicle laws is not an offense to which double jeopardy protections apply, and even if it were, the State could prove negligent homicide without reference to the red light violation. The superior court determined that double jeopardy protections were triggered by the prosecution of a red light violation and that the State was barred from using the defendant's red light conviction in its prosecution for negligent homicide. The court denied the motion to dismiss, however, relying on the State's representation that it could prove negligent homicide without reference to the facts and evidence relating to the red light violation.

Prior to trial, the State filed a motion regarding its intention to introduce evidence concerning the traffic lights and controls at the site of the accident. In light of this motion, the court reconsidered its earlier order and granted the defendant's motion to dismiss the indictment. The court determined that in the negligent homicide prosecution the State would necessarily have to prove elements of the defendant's conduct that would constitute the red light violation for which the defendant had already been prosecuted. Such a prosecution, the court concluded, is prohibited by the United States Supreme Court's interpretation of the federal double jeopardy clause in *Illinois v. Vitale*, 447 U.S. 410 (1980), and *Grady v. Corbin*, 495 U.S. 508 (1990).

On August 6, 1991, a second indictment for negligent homicide was returned against the defendant, and again the superior court granted his motion to dismiss. Although the indictment made no mention of a traffic signal at the intersection, the court found the negligent homicide offense to be based on the same conduct for which the defendant had already been prosecuted, and the allegation of different conduct in the second indictment to be merely an attempt by the State to circumvent the real facts of the case. The State appeals the dismissals of both indictments.

 The double jeopardy clauses of the United States and New Hampshire Constitutions protect against multiple prosecutions and multiple punishments for the same offense. *Grady*, 495 U.S. at 516; *see State v. Constant*, 135 N.H. 254, 255, 605 A.2d 206, 207 (1992). These protections are triggered by criminal proceedings and in the "rare case" under the Federal Constitution "[w]here a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears

to qualify as 'punishment.'" *United States v. Halper*, 490 U.S. 435, 449–50 (1989). The Supreme Court in *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938), acknowledged that "Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *See also State v. Bowles*, 113 N.H. 571, 573, 311 A.2d 300, 302 (1973) (stating that "where the procedure is civil no question of double jeopardy arises").

The single question for our consideration in this case is whether the defendant's red light violation is a criminal offense for the purposes of double jeopardy under the State and Federal Constitutions. We will consider the defendant's contentions first under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing decisions of the Supreme Court of the United States for their guidance in analyzing and deciding the State issues. *See Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983). Since on the issue before us we conclude that the federal law is not more favorable to the defendant, we make no separate federal analysis.

Our analysis under the New Hampshire Constitution follows that set forth by the Supreme Court of the United States in *United States v. Ward*, 448 U.S. 242 (1980). *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 363–66 (1984) (applying the *Ward* test in the double jeopardy context). To determine whether a statutorily defined penalty is criminal or civil in nature, we will first look to the express or implied intent of the legislature in establishing the penalty. *Ward*, 448 U.S. at 248. Where the legislature has indicated an intention to establish a civil penalty, we will then determine whether the statutory scheme is so punitive in its purpose or effect so as to negate that intention. *Id.* at 248–49. "In regard to this latter inquiry . . . only the clearest proof [will] establish the unconstitutionality of a statute on such a ground." *Id.* at 249 (quotation omitted).

In *United States v. One Assortment of 89 Firearms*, 465 U.S. at 362–66, the Supreme Court applied the *Ward* test to determine whether a federal forfeiture statute was criminal or civil for double jeopardy purposes. The court found "Congress' intent [to be] most clearly demonstrated by the procedural mechanisms it established for enforcing forfeitures under the statute." *Id.* at 363. Employing a similar analysis, we find the State legislature's intent to designate certain traffic violations as civil offenses demonstrated by the statutory mechanisms created for their enforcement and adjudication.

■ The legislature has created a distinct body of laws under RSA chapter 265 to govern the operation of motor vehicles and establish the rules of the road. Enacted as part of the motor vehicle laws, this chapter exists outside of the statutory Criminal Code. In most cases, a person charged with a traffic violation under this chapter may enter a plea by mail in accordance with RSA 262:44 (1982) (amended 1992). This mail-in procedure is available in all cases under chapter 265, except those involving felonies, misdemeanors, and certain designated violations. *See id.* As part of this mail-in system, the district or municipal court may utilize a unique default provision by which an offender may be defaulted and have judgment entered against him if he "[d]oes not enter a plea by mail prior to the arraignment day or does not appear personally or by counsel on or before that date or move for a continuance." RSA 502-A:19-b, II(a)(1) (Supp. 1990) (current version at RSA 502-A:19-b, II(a) (Supp. 1992)). The existence of this default provision indicates that the legislature intended those traffic violations to which it applies to be civil in nature. If adjudications of these traffic violations were criminal proceedings, this default provision would have serious constitutional implications. Following the presumption that all legislative enactments are intended to comply with constitutional strictures, *see White v. Lee*, 124 N.H. 69, 77–78, 470 A.2d 849, 854 (1983), we hold that the legislature intended the traffic violations adjudicable under this mail-in procedure to be civil in nature.

■ It is true that the adjudication of a traffic violation may have some of the traditional elements of a criminal proceeding. These offenses are handled in the district and municipal courts with trials in some cases, *see* RSA 262:44, II (Supp. 1992) (codification of current practice) and must be proved beyond a reasonable doubt, *see* RSA 625:10. We have acknowledged, however, that the applicability of characteristically criminal procedures does not prevent a proceeding from being civil in substance. *See State v. Hudson*, 121 N.H. 6, 12, 425 A.2d 255, 258 (1981) (holding an involuntary commitment proceeding to be a civil proceeding even though it utilized the standard of proof required in criminal trials).

Having established the legislature's intention of making certain traffic violations civil in nature, we now turn to the second part of the *Ward* test. We must determine whether the enforcement and adjudication of these violations are so punitive as to negate the legislature's intention. *Ward*, 448 U.S. at 248–49; *see Bowles*, 113 N.H. at 574, 311 A.2d at 302 (noting that the actual effect of a statutory penalty is a substantial factor in determining the character of a proceeding).

Only the clearest proof, however, will serve to override that intention. *Ward*, 448 U.S. at 249.

■ We hold that the penalties imposed for these traffic violations are not criminal sanctions or punishment, but are essentially remedial in nature, designed to compensate the government for its enforcement and administration of the State's motor vehicle laws in its efforts to regulate the safety of the driving public. Conviction of one of these traffic violations may result in a fine, probation, conditional or unconditional discharge, *see* RSA 651:2, III (1986) (amended 1992), or the loss of one's license, *see, e.g.*, RSA 265:82-b, 1 (Supp. 1990). It is well established that the revocation of one's driving privileges is not a criminal sanction when done by the State to remove irresponsible drivers from the highways of the State for the protection of the public. *State v. Morrill*, 123 N.H. 707, 712, 465 A.2d 882, 886 (1983). Similarly, the fines imposed for these traffic violations cannot be said to be sanctions designed to punish offenders for criminal wrongdoing. The fines do not reflect the individual culpability of each offender, but instead are commonly drawn from a uniform schedule of fines. *See* RSA 502-A:19-b, I (Supp. 1990) (amended 1992). They reflect a reasonable assessment designed to reimburse the government for its expenses in regulating public safety through the administration of its motor vehicle laws. *See One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237 (1972) (finding forfeiture under federal tariff regulations to be compensation for the government's investigation and enforcement expenses). Certainly the fines are not so disproportionately severe as to rise to the level of criminal punishment. The same holds true for terms of probation and conditional discharge. Because the sanction for failing to successfully serve these terms may be only that which could have been originally imposed, probation and conditional discharge under the motor vehicle laws cannot be more severe than the fines. *See* RSA 651:2, VII; *State v. White*, 131 N.H. 555, 557, 556 A.2d 308, 310 (1989).

■ The defendant's failure to stop at a red light is one of the traffic offenses to which the mail-in procedures of RSA 502-A:19-b (Supp. 1990) (amended 1992) apply. *See* RSA 262:44 (1982) (amended 1992). We therefore hold that the prosecution of this offense was a civil matter and reverse the superior court's rulings that the State's negligent homicide prosecution is barred by the prohibitions against double jeopardy.

*Reversed and remanded.*

All concurred.