STATE of Indiana, Appellant
(Plaintiff Below),

v.

Stephen R. HURST, Appellee
(Defendant Below).

No. 43S03–9705–CR–295.

Supreme Court of Indiana.

Oct. 30, 1997.

Jeffrey A. Modisett, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellant.

Kurt Bentley Grimm, Grimm & Grimm, Auburn, for Appellee.

## ON CRIMINAL PETITION FOR TRANSFER

SELBY, Justice.

The State of Indiana is appealing the dismissal of its reckless homicide case against defendant Stephen Hurst ("defendant"). Defendant moved to dismiss in the trial court on the grounds that the reckless homicide charge would violate his double jeopardy rights because he had previously been tried for a traffic violation arising from the same facts. The trial court granted the motion. On appeal by the State, the Court of Appeals affirmed the trial court's decision. *State v. Hurst*, 674 N.E.2d 622 (Ind.Ct.App.1996). The State petitioned this Court for transfer to address the issue of whether the trial court incorrectly concluded that the reckless homicide charge would subject defendant to double jeopardy and, thus, whether the trial court erred in dismissing the case. Defendant argues that, notwithstanding the double jeopardy issue, the trial court is precluded from further consideration of this case due to Criminal Rule 4(C). We earlier granted transfer and now hold that the trial court erred in its double jeopardy ruling and that defendant has a valid Criminal Rule 4(C) argument.

## FACTS

On the morning of October 5, 1994, defendant was traveling north on County Road 300 West ("CR300W") and came to the intersection with County Road 600 North ("CR600N") at around 8:49 a.m. Defendant had a stop sign at this intersection. At the same time, John R. Willard, Sr. was traveling west on CR600N and was also approaching the intersection of CR600N and CR300W. Willard had no stop or yield sign at this intersection. Failing to yield to Willard's oncoming car, defendant entered the intersection and hit Willard's car on its left side. Willard died as the result of this accident.

On October 21, 1994, defendant was found to have violated Indiana Code Section 9–21–8–29, failure to yield the right-of-way, a class C infraction. The court imposed a fine of seven dollars, along with court costs of fifty-four dollars and fifty cents. Defendant paid his fine that same day.

On December 20, 1994, the State charged defendant by information with reckless homicide, a class C felony. On March 22, 1995, defendant filed a motion to dismiss. Defendant argued that the State could not prosecute him for reckless homicide because he had already been prosecuted and fined for failure to yield the right-of-way. On March 20, 1996, the court granted defendant's motion to dismiss. The State appealed.

## DISCUSSION

### I.

The first and most important issue before this Court is whether the imposition of a fine for failure to yield the right-of-way can be "jeopardy" under the Double Jeopardy Clauses of the Indiana and United States Constitutions.[1] The State offers two arguments as to why defendant's double jeopardy rights were not violated, and why, therefore, the trial court erred in dismissing the charge. First, the State argues that failure to yield the right-of-way and reckless homicide are not the same offense. Therefore, defendant has not been twice placed in jeopardy for the

---

1. The Double Jeopardy clause of the Indiana Constitution states that, "No person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. The Double Jeopardy clause of the United States Constitution, made applicable to the States by the Fourteenth Amendment, *see Bryant v. State*, 660 N.E.2d 290, 295 (Ind. 1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996), states that, "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Because neither party presents a cogent argument as to why the analysis would be different under the Indiana Constitution, we will address this issue under the established federal double jeopardy analysis. *See Bryant*, 660 N.E.2d at 295 n. 12. Furthermore, the constitutional arguments of both parties focus on federal double jeopardy jurisprudence.

same offense. Second, the State argues that, even if the two offenses are the same, the fine for failure to yield the right-of-way was not a "punishment" which would equate to "jeopardy" under the Double Jeopardy Clause. As such, defendant has yet to be put in jeopardy for the actions which led to the death of Willard.

The Double Jeopardy Clause has been held to protect against three specific abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *See United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); *Bryant v. State,* 660 N.E.2d 290, 295 (Ind.1995). In order to determine whether a defendant is in danger of having his double jeopardy rights violated, a court must determine whether the defendant will be placed in jeopardy twice for the same offense. *See Dep't of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 784, 114 S.Ct. 1937, 1948–49, 128 L.Ed.2d 767 (1994); *Bryant,* 660 N.E.2d at 295.

The United States Supreme Court has recently held that "jeopardy" is not limited to criminal punishments and prosecutions; nominally "non-criminal" sanctions can be "punishment" which constitutes "jeopardy" under the Double Jeopardy Clause. *See Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767; *Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487. In *Kurth Ranch,* the Court held that a state tax on the storage and possession of dangerous drugs, subsequent to criminal charges for drug possession, was a second punishment and was "the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time 'for the same offense.'" *Kurth Ranch,* 511 U.S. at 784, 114 S.Ct. at 1948. The Court in *Halper* held that a civil sanction which "bears no rational relation to the goal of compensating the Government for its loss" can be a "punishment" for double jeopardy purposes. *Halper,* 490 U.S. at 448–50, 109 S.Ct. at 1901–03.

■ Determining whether a sanction is civil or criminal is generally a two-step process. First, as the initial question is one of statutory construction, the court must deter-

mine whether the legislature intended the proceedings to be civil or criminal. *Kansas v. Hendricks,* —— U.S. ——, —— – ——, 117 S.Ct. 2072, 2081–82, 138 L.Ed.2d 501 (1997); *United States v. Ursery,* 518 U.S. 267, ——, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549 (1996); *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). If civil was the intent, the court must next determine whether the party challenging the statute has provided "the clearest proof" that the "statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Hendricks,* —— U.S. at ——, 117 S.Ct. at 2082 (quoting from *Ward,* 448 U.S. at 248–49, 100 S.Ct. at 2641–42); *Ursery,* —— U.S. at ——, 116 S.Ct. at 2148. Thus, the determining factor of whether a sanction is criminal or civil is not necessarily the label given it by the legislature; rather a court confronted with a challenge to a nominally civil proceeding and sanction must examine whether the sanction is so punitive in effect that it can no longer be said to serve the remedial purposes of a civil sanction. *See Ursery,* —— U.S. at ——, 116 S.Ct. at 2147; *Kurth Ranch,* 511 U.S. at 778, 114 S.Ct. at 1945; *Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1901–02; *Ward,* 448 U.S. at 248, 100 S.Ct. at 2641; *Bryant,* 660 N.E.2d at 295. If, after assessing the character and purpose of the sanction in the particular case, the court determines that the sanction serves the purpose of punishment, then the court may conclude that the sanction is the equal of criminal punishment under the protection of the Double Jeopardy Clause. *See Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1901–02; *Bryant,* 660 N.E.2d at 295–96.

The United States Supreme Court has examined various factors to determine whether a nominally civil sanction is so punitive as to be the equal of criminal punishment. For example, the Court in *Ursery* was confronted with the question of whether a civil forfeiture for drug related activity was "punishment" for purposes of the Double Jeopardy Clause. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2138. The Court first noted that Congress intended these forfeitures to be civil proceedings because they are against property, not people, and because the procedure itself was civil.

*Id.* at ——, 116 S.Ct. at 2147. Next, the Court found that the proceedings were not so punitive in nature as to be "punishment." In so finding, the Court noted that the government is not required to demonstrate scienter, that though there is an element of deterrence, deterrence may serve civil as well as criminal goals, and that these forfeitures served non-punitive goals such as ensuring that people will keep their lands from being used for illegal purposes. *Id.* at ——– ——, 116 S.Ct. at 2148–49.

In *Kurth Ranch,* the issue before the Court was whether a tax on the possession and storage of drugs was punitive in nature and thus "subject to the constraints of the Double Jeopardy Clause." *Kurth Ranch,* 511 U.S. at 779, 114 S.Ct. at 1945. The Court began by noting that the high rate of taxation and the obvious deterrent purpose, while not necessarily making the tax a punishment, did factor into the decision. *Id.* at 780, 114 S.Ct. at 1946. Next, the Court noted that the assessment of the tax was linked to the commission of the crime and was exacted only after an arrest for the same crime. *Id.* at 781, 114 S.Ct. at 1946–47. Finally, the Court noted that the tax was imposed on goods which the taxpayer neither owned nor possessed since the State had already confiscated them. *Id.* at 783, 114 S.Ct. at 1948. The Court concluded that "[t]aken as a whole, this drug tax is a concoction of anomalies, too far removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of double jeopardy analysis." *Id.; see also Bryant,* 660 N.E.2d 290 (wherein this Court determined that a tax similar to that in *Kurth Ranch* was punishment after this Court examined four factors: the tax's deterrent rather than revenue purpose, its high rate, its prerequisite of the commission of a crime, and its difference from a normal excise tax).

A final example is provided by the United States Supreme Court's decision in *Halper.*

The issue before the Court was whether a civil fine was punishment for the purposes of double jeopardy analysis. *Halper,* 490 U.S. at 441, 109 S.Ct. at 1897–98. In finding that the fine may have been punishment under the Double Jeopardy Clause, the Court noted that, though the Government is entitled to "rough remedial justice," the fine cannot be "overwhelmingly disproportionate to the damages" caused. *Id.* at 446, 449, 109 S.Ct. at 1900, 1902. The defendant presented sixty-five false Medicare reimbursement forms that totaled $585 in overpayment from the Government. *Id.* at 437, 109 S.Ct. at 1895–96. The fine, on the other hand, was $130,000. *Id.* at 438, 109 S.Ct. at 1896. The Court held that the determination of whether this fine was a punishment hinged upon a comparison between the fine and the actual damages and costs of the Government. *Id.* at 449, 109 S.Ct. at 1902.[2]

■ Moving to the case at hand, we must first determine whether the legislature intended for a failure to yield the right-of-way ticket to be a civil or a criminal proceeding. Failure to yield the right-of way is a Class C infraction. I.C. §§ 9–21–8–29, 9–21–8–49 (1993). Proceedings for violation of an infraction are conducted under the Indiana Rules of Trial Procedure, and the plaintiff must prove the commission of the infraction by a preponderance of the evidence. I.C. § 34–4–32–1(c),(d) (1993). Also, the Code defines an "offense" as "a crime. The term does not include an infraction." I.C. § 35–41–1–19 (1993). Therefore, although traffic violations may once have been criminal offenses, *see Terpstra v. State,* 529 N.E.2d 839, 841 n. 1 (Ind.Ct.App.1988), traffic violations are now civil proceedings. *Id.; Pridemore v. State,* 577 N.E.2d 237, 238 (Ind.Ct.App.1991).

Having determined that the failure to yield the right-of-way is nominally a civil proceeding, we must next examine whether the fine imposed on defendant was so punitive as to constitute punishment under the Double

---

**2.** The Court remanded to the District Court for a hearing as to the Government's costs and damages, and, on the basis of that hearing, to determine whether the fine was too disproportionate to the damages caused by the defendant. *Id.* at 452, 109 S.Ct. at 1903–04. As the Court noted,

this was the "rule for a rare case." *Id.* at 449, 109 S.Ct. at 1902. Thus, while we feel that it is important to consider whether the government is receiving "rough remedial justice," we do not feel that defendant is entitled to a hearing on the actual costs of the government.

Jeopardy Clause. In holding that defendant's fine was "punishment," the Court of Appeals noted that "a monetary judgment entered upon a finding of a violation of an infraction is the functional equivalent of a penal fine, the judgment serving to induce compliance with the statute." *Hurst*, 674 N.E.2d at 624. While the Court of Appeals was correct to consider this factor, deterrent effects of a sanction will not alone make a civil fine so punitive as to be punishment. *See Ursery,* —— U.S. at ——, 116 S.Ct. at 2149.

The enforcement of the failure to yield the right-of-way statute serves several remedial purposes. For example, the statute protects the public at large by establishing a legal order by which cars are to proceed through a highway intersection. Thus, the statute promotes highway safety. *See Schrefler v. State,* 660 N.E.2d 585, 588 (Ind.Ct.App.1996) (holding for similar reasons that the suspension of a driver's license for drunk driving was not criminal punishment under the Double Jeopardy Clause). Furthermore, the statute could be said to serve the remedial purpose of protecting the driver himself. *Id.* The fact that the statute serves important remedial goals is evidence that the fine is not meant as punishment. *See Ursery,* —— U.S. at ——, 116 S.Ct. at 2148.

Further evidence that the statute is not meant as punishment is that it does not have a scienter requirement. Violation of this traffic infraction does not require a *mens rea* showing. *See Pridemore,* 577 N.E.2d at 239; *see also State v. Keihn,* 542 N.E.2d 963, 968 (Ind.1989) (distinguishing between a misdemeanor, which requires a *mens rea* element, and an infraction). "The existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes." *Kansas v. Hendricks,* —— U.S. at ——, 117 S.Ct. at 2082; *see Ursery,* —— U.S. at ——, 116 S.Ct. at 2149. When a sanction is not linked to a showing of *mens rea,* it is less likely to be intended as punishment.

Finally, we believe that the $61.50 which defendant was required to pay (a $7 fine plus $54.50 court costs) was "rough remedial justice." In order to enforce this statute and protect the public, the State must employ police and fund the proceedings. Thus, $61.50, in all likelihood, is not grossly disproportionate to the State's costs. *See State v. Fitzgerald,* 137 N.H. 23, 622 A.2d 1245, 1248 (1993); *Purcell v. United States,* 594 A.2d 527, 531 (D.C.App.1991).

After taking account of a number of factors, we conclude that defendant was not in danger of having his double jeopardy rights violated. The proceedings for a violation of the failure to yield the right-of-way statute are civil. Therefore, defendant has not yet been criminally prosecuted for his actions. Furthermore, the fine levied on defendant was not so punitive as to constitute "punishment" under the Double Jeopardy Clause. We hold, therefore, that defendant's fine for violation of the failure to yield the right-of-way statute did not constitute a first jeopardy under the Double Jeopardy Clause. *See State v. Fitzgerald,* 137 N.H. 23, 622 A.2d 1245 (1993); *State v. Thierfelder,* 174 Wis.2d 213, 495 N.W.2d 669 (1993); *Purcell v. United States,* 594 A.2d 527 (D.C.App.1991). Because defendant has not yet been placed in jeopardy, we need not address whether failure to yield the right-of-way and reckless homicide are the same offense.

## II.

■ Defendant responds to the State's appeal by arguing that his case should be dismissed pursuant to Indiana Criminal Rule 4(C). Defendant argues that Criminal Rule 4(C) establishes a time period during which a person must be brought to trial and that he has not been brought to trial during that time period. Thus, he contends that, if we find that the State can try him for reckless homicide, then we should remand to the trial court with an order to discharge.[3]

---

**3.** The State argues that defendant cannot argue for discharge under Criminal Rule 4(C) on appeal when it was not raised at trial. While *McIntyre v. State,* 460 N.E.2d 162 (Ind.Ct.App. 1984) does stand for this proposition, it does not

apply in this case. In *McIntyre,* the defendant went to trial, was convicted, and never raised a Criminal Rule 4(C) claim until his appeal. In the present case, defendant has not yet gone to trial, nor has a trial date been set.

Criminal Rule 4(C) reads in pertinent part that:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar ... Any defendant so held shall, on motion, be discharged.

Crim.R. 4(C). Under this rule, a defendant may seek and be granted a discharge if he is not brought to trial within the proper time period. *Morrison v. State*, 555 N.E.2d 458 (Ind.1990). However, "if a defendant seeks or acquiesces in any delay which results in a later trial date, the time limitations set by Criminal Rule 4 are extended by the length of such delays." *Burdine v. State*, 515 N.E.2d 1085, 1090 (Ind.1987). The question which arises is whether defendant's motion to dismiss "caused a delay."

 This Court has held that in some instances a motion to dismiss by a defendant does "cause a delay" such that the one year period is extended. *See Little v. State*, 275 Ind. 78, 415 N.E.2d 44 (Ind.1981); *Hodge v. State*, 264 Ind. 377, 344 N.E.2d 293 (Ind. 1976); *Shack v. State*, 259 Ind. 450, 288 N.E.2d 155 (Ind.1972). In *Shack*, the defendant moved to dismiss three days prior to the day trial was set to begin, and he moved for a continuance so that a hearing could be held on the motion. *Shack*, 288 N.E.2d at 160. We held that a delay in trial (a fifty-six day delay, twenty-eight of which were due to defendant's tardiness in filing a brief) was caused by the defendant's actions and that the delay ended the day that the court ruled on the motion. *Id.* In *Hodge*, the defendant moved to dismiss on the day that trial was set to begin. *Hodge*, 344 N.E.2d at 294. This Court held that the defendant's actions caused a delay in trial (a seven day delay) which ended the day that the court ruled on

the motion. *Id.* In *Little*, the defendant moved to dismiss a habitual offender count. *Little*, 415 N.E.2d at 45. It is unclear whether the motion was filed before or after a trial date was set. We held that the motion caused a delay in trial (a ten day delay) which ended when the motion was ruled on. *Id.; see also Terry v. State*, 602 N.E.2d 535, 543 (Ind.Ct.App.1992) (holding that a motion to dismiss, one of several pre-trial motions by the defendant, did delay the trial under Rule 4(C)).

Some of our more recent Criminal Rule 4(C) opinions have been more specific as to the effect of timing on determining whether a defendant's actions caused a delay in trial. In *State ex rel. O'Donnell v. Cass Superior Court*, 468 N.E.2d 209 (Ind.1984), this Court held that a defendant who agreed to a continuance, prior to the setting of a trial date, did not cause a delay. *Id.* at 211. By way of explanation, we stated that a "defendant in that situation can only assume that when a trial date is finally set it will conform to the limitations of the rule." *Id.* We ruled similarly in *Morrison v. State*, 555 N.E.2d 458 (Ind.1990) where we noted that a defendant's motion to continue an omnibus hearing, prior to the setting of a trial date, should not be counted as a delay caused by the defendant. *Id.* at 461. Several Court of Appeals cases have also held that a motion for continuance, filed or agreed to by the defendant prior to the setting of a trial date, did not delay the trial under Criminal Rule 4(C). *Solomon v. State*, 588 N.E.2d 1271, 1272 (Ind.Ct.App. 1992); *Harrington v. State*, 588 N.E.2d 509, 511 (Ind.Ct.App.1992).

Defendant's motion to dismiss in this case did not cause a delay in trial. Defendant was charged on December 20, 1994. He filed his motion for dismissal on March 22, 1995, before a trial date had been set. The court held a hearing on the motion on August 11, 1995, and the motion was granted on March 20, 1996. In other words, a hearing was not had on the motion for 142 days and a ruling was not made on the motion for another 221 days.[4] This means that defendant's motion

---

**4.** After defendant's motion to dismiss, the State filed a motion for a pre-trial conference on

March 27, 1995, a date was set for April 14, 1995, the date was continued once by defendant,

to dismiss was granted 363 days after it was made and 90 days after December 20, 1995 (one year from the date defendant was charged). Similar to those cases where a defendant's motion to continue prior to the setting of a trial date did not cause a delay, defendant's singular motion to dismiss in this case did not cause a delay. Defendant filed the motion at the early end of the time period and before a trial date was set. He had a reasonable expectation that the motion would be ruled on in due course and that, if it came to trial, he would be tried within the correct time limit.

■ It is true that the purpose of Criminal Rule 4(C) is to create early trials and not to discharge defendants. *See O'Donnell,* 468 N.E.2d at 211. However, the burden is on the State, not the defendant, to bring defendant to trial within one year. *Id.* The one year time period should be extended because of defendant's actions [5] only if the defendant does something that is inconsistent with being brought to trial by the trial date or within one year. For example, if defendant had filed a motion to dismiss within sixty days of the trial date, then perhaps he would have caused a delay in trial as a court has at least thirty days to set a hearing on such a motion and thirty days from the hearing to rule on the motion under Trial Rule 53.1. Ind.Trial Rule 53.1(A). Or, perhaps a defendant who raises numerous pre-trial motions can be said to have caused a delay in trial. However, in the present case defendant did nothing more than raise a motion which four distinguished judges found to be meritorious.

Once the time period under Criminal Rule 4(C) has elapsed, a defendant need only move for discharge. *See Morrison,* 555 N.E.2d at 462–63. A court should grant a valid Criminal Rule 4(C) motion because Criminal Rule 4(C) can only protect against undue delays if it is enforced. A defendant with a meritorious dismissal claim should not have to worry that the bringing of such a claim will toll his Criminal Rule 4(C) rights indefinitely.

## CONCLUSION

We vacate the Court of Appeals decision, reverse the trial court, and remand to the trial court for further proceedings in accord with this opinion.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SULLIVAN, J., concurs as to part I and dissents as to part II.

and the pre-trial conference was completed by June 7, 1995. On June 7, 1995, defendant sought and was granted a hearing on his motion to dismiss; the date set was June 30, 1995. Also on June 7, the State and defendant agreed to continue the matter pending the omnibus and discovery cutoff and the outcome of the motion to dismiss. On June 28, 1995, both the State and defendant motioned to continue the dismissal hearing and a new date was set for August 11, 1995. Presumably the hearing occurred on August 11, 1995. The record shows no other motions or occurrences until the trial court granted the motion to dismiss on March 20, 1996. The only "delay" which defendant might be responsible for was the forty-four day continuance between June 30 and August 11, 1995. Even so, this would not change the outcome. Everything else was ordinary, pre-trial occurrences that did not "delay" the trial.

5. The time period may also be extended under Criminal Rule 4(C) due to court congestion. The record contains no evidence of court congestion.