**Robert DAVIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 32A01–0408–PC–337.

Court of Appeals of Indiana.

Dec. 29, 2004.

Transfer Denied Feb. 18, 2005.

---

Eric K. Koselke, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner Robert Davis appeals the denial of his petition for post-conviction relief, claiming that both his trial and appellate counsel were ineffective for failing to safeguard his right not to be punished twice for the same offense in violation of double jeopardy principles. In particular, Davis argues that the filing of criminal charges against him that arose from the acts that triggered a civil forfeiture proceeding subjected him to double jeopardy. Davis claims that his trial counsel was ineffective for failing to object to this issue at trial, and he further contends that his appellate counsel was ineffective for not raising the ineffectiveness of trial counsel in the direct appeal.

We conclude that the criminal proceedings that were concluded after the State had received a judgment in the forfeiture action did not amount to a violation of double jeopardy principles. Thus, we find that Davis did not receive the ineffective assistance of either trial or appellate counsel, and we affirm the denial of his petition for post-conviction relief.

### FACTS

As reported in Davis's direct appeal, the facts of this case are as follows:

On September 26, 1996, Clay County Deputy Sheriff Michael Heaton (Deputy Heaton) was dispatched to Davis' residence in Knightsville, Indiana to investigate a complaint of battery against Jennifer Stockram (Stockram), Davis' girlfriend. Deputy Heaton found Stockram at a neighbor's house across the street. Stockram told Deputy Heaton that Davis had hit her because he was upset that the police had been to their residence the night before to investigate a domestic disturbance between her and Davis. Stockram also told Deputy Heaton that Davis had told her that they 'needed to get out of there' because he had stolen vehicles on his property. (R. 150). Deputy Heaton called an ambulance because Stockram's face was swollen; and she was having difficulty standing and walking. Before she left, Stockram wanted to get some of her personal belongings from her and Davis' trailer. Deputy Heaton drove Stockram across the street to the trailer. Stockram told Deputy Heaton that Davis had left the area. However, Deputy Heaton wanted to verify that Davis was not in the trailer. Therefore, Deputy Heaton walked Stockram to the door and stood on the porch. When Stockram opened the door, Deputy Heaton saw two motorcycles in the kitchen of the trailer. Deputy Heaton noticed that one of the motorcycles, a blue Harley Davidson, matched the description of a motorcycle that was reported stolen from Terre Haute, Indiana. In April 1996, the Terre Haute Police Department informed the Clay County Sheriff's Department that a blue Harley Davidson motorcycle was reported stolen and that Davis was a suspect.

Based on this information, Deputy Heaton filed a Search Warrant Affidavit of Probable Cause. Deputy Heaton requested that Davis' residence and outbuildings be searched and a motorcycle and stolen vehicles be seized. Deputy Heaton articulated the previously mentioned factors in his Search Warrant Affidavit for Probable Cause. The court issued a search warrant the same day. The Clay County Sheriff's Department executed the search warrant on Davis' property in Knightsville. The police found nine vehicles on Davis' property that they were able to determine had

been stolen, as well as an engine from a pickup truck that had been stolen.

Subsequently, the police obtained and executed three more search warrants. The police recovered criminal evidence from the second and third search warrants that were executed. However, no criminal evidence was obtained from the execution of the fourth search warrant. *Davis v. State,* No. 32A04–0004–CR–153, slip op. at 1–4, 2000 WL 1637768 (Ind.Ct. App. October 24, 2000).

As a result of this incident, Davis was charged with Counts I–IV, Altering An Original or Special Identification Number,[1] a class C felony, Counts V–VIII, Possession of a Vehicle Knowing the Vehicle Is In Violation of sections 2, 3, and/or 4 of Indiana Code section 9–18–8,[2] a class D felony, counts IX–XX, Receiving Stolen Auto Parts,[3] a class D felony, Corrupt Business Influence,[4] a class C felony, and with being a Habitual Offender.[5]

Law enforcement officials could not locate Davis, so he was not served with the arrest warrant until 1997. The State also filed a civil forfeiture action against Davis, but he could not be served personally with notice of these proceedings because his whereabouts were unknown.

Pursuant to the forfeiture action, the State sought the same property that was the subject of the criminal proceedings, which included confiscated vehicles, tools, cash and other items of personal property. The State also sought punitive damages in the amount of $100,000. After notice by publication, the trial court entered a default judgment against Davis as to the civil action.

Then, following Davis's arrest, the trial court scheduled a jury trial on the criminal charges that commenced on August 26, 1997. At the close of the State's case, Davis moved for a directed verdict that was granted with respect to Counts V–VIII—the possession of vehicle charges. The jury then found Davis guilty of the remaining charges and with being a habitual offender. Thereafter, on October 14, 1997, Davis was sentenced to a total of eighty-eight years. This sentence included application of the habitual offender enhancement and the imposition of consecutive sentences based upon the trial court's determination that the aggravating circumstances outweighed those in mitigation. Davis then appealed to this court, arguing that the trial court erred in denying his motion to suppress because the search warrant was defective, and that he was improperly sentenced. In the end, we affirmed the judgment in all respects.

On January 31, 2002, Davis filed a petition for post-conviction relief, which he amended a number of times. In his petition, Davis raised the following issues: (1) his sentences with respect to two of the remaining possession of vehicle counts violated both State and Federal double jeopardy provisions; (2) prosecutorial misconduct occurred that denied him the right to due process; and (3) he received the ineffective assistance of both trial and appellate counsel because neither objected to— nor raised—the double jeopardy concerns. Following an October 15, 2003 hearing on the petition, the trial court denied Davis's request for relief. Davis now appeals, challenging the post-conviction court's determination that his trial counsel was not ineffective for failing to object to the crimi-

---

**1.** Ind.Code § 9–18–8–12.

**2.** *Id.*

**3.** *Id.*

**4.** Ind.Code § 35–45–6–2(2).

**5.** Ind.Code § 35–50–2–8.

nal prosecution that involved the same property as was involved in the civil forfeiture action. Davis further asserts that the post-conviction court erroneously determined that his appellate counsel was not ineffective for failing to challenge trial counsel's ineffectiveness with respect to this issue on appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially observe that post-conviction relief is a collateral attack on the validity of a criminal conviction, and the petitioner carries the burden of proof. *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind.2001). Post-conviction proceedings do not afford a petitioner with a "super-appeal." *McCary v. State,* 761 N.E.2d 389, 391 (Ind.2002). Rather, our post-conviction rules create a narrow remedy for subsequent collateral challenges to convictions. *Ben–Yisrayl v. State,* 753 N.E.2d 649, 653 (Ind.2001).

Inasmuch as Davis is appealing from a negative judgment, he must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Williams v. State,* 748 N.E.2d 887, 890 (Ind.Ct.App.2001). We will only grant relief if the evidence is without conflict and leads to a conclusion contrary to that reached by the post-conviction court. *Id.* at 890.

### A. Trial Counsel

In proceeding to the merits of Davis's claim that his trial counsel was ineffective for failing to object to a purported double jeopardy violation, we first note that the standard for evaluating such claims is well-established: reversal for ineffective assistance of counsel is appropriate only when a defendant shows both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced the defendant as to deprive him of a fair trial. *Pennycuff v. State,* 745 N.E.2d 804, 811 (Ind.2001) (citing *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. As a result, judicial scrutiny of an attorney's performance is highly deferential and will not be exercised through the distortion of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffective assistance. If the defendant can prove deficient performance of counsel, he must also show a reasonable probability that it altered the outcome of the case. *Id.*

As noted above, the State sought forfeiture of the property that had been seized from Davis pursuant to the search warrants. The State ultimately was awarded a judgment against Davis in that action, and he was then charged with the instant criminal offenses. In essence, Davis now complains that his trial counsel should have objected to the criminal prosecution because he had already been punished for his actions in the forfeiture proceedings.

The Double Jeopardy Clause provides that no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. This provision yields three specific protections: (1) protection from reprosecution for the same offense after an acquittal; (2) protection from reprosecution for the same offense after conviction; and (3) protection from multiple punishments for the same offense. *Davenport v. State,* 734 N.E.2d 622, 624 (Ind.Ct.App. 2000), *trans. denied.* Davis's argument is that the State has punished him twice for

the commission of the same offense. Appellant's Br. p. 1.

In determining whether a sanction is criminal or civil for double jeopardy purposes, this court uses a two-part test. First, we consider whether the legislature intended for the sanction to be civil or criminal. *State v. Hurst*, 688 N.E.2d 402, 404 (Ind.1997). If it is found that the legislature intended the sanction to be civil, the party challenging the sanction must provide "the clearest proof" that the "statutory scheme is so punitive in purpose or effect to negate [the State's] intention to deem it civil." *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 2081–82, 138 L.Ed.2d 501 (1997)). It is apparent that a legitimate purpose for civil forfeiture is the confiscation of property that has been used to violate the law. *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 2140, 135 L.Ed.2d 549 (1996). Also, in *Hudson v. U.S.*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), the United States Supreme Court considered various criteria in determining whether a civil sanction is so punitive as to be the equivalent of criminal punishment. In particular, the *Hudson* court set forth the following considerations: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Id.* 118

S.Ct. at 493. The *Ursery* court also observed that there is a sharp distinction "between in rem civil forfeitures and in personam civil penalties such as fines: Though the latter could, in some circumstances be punitive, the former could not." *Ursery*, 116 S.Ct. at 2141.

Our forfeiture statute, Indiana Code section 34-24-1-1, sets forth a variety of circumstances that permit the seizure of property by the government when that property is used or involved in the commission of criminal offenses. The items include real or personal property purchased with money that is traceable as proceeds with respect to the violation of a criminal statute; vehicles that are used in the commission of criminal offenses; controlled substances; and money, securities, and weapons that are used in the commission of various crimes. The remaining sections under the forfeiture chapter set forth the procedures that the State must follow in order to ultimately obtain ownership of the property. And the final disposition of vehicles and other property that is forfeited is also described. *See* I.C. § 34-24-2, -9.[6]

In examining the statute, we find this case similar to the circumstances that were presented in *Ursery*. In that case, the court was confronted with the question of whether a civil forfeiture for drug related activity was "punishment" for purposes of the double jeopardy clause. It was observed that Congress intended forfeitures to be civil proceedings because they are against property—not people—and because the procedure itself was civil. It was also established that the proceedings were not so punitive in nature as to constitute a "punishment." *Id.* 116 S.Ct. at 2138. Davis, however, relies on *State v.*

---

**6.** For instance, Indiana Code section 34-24-1-9(b) provides that "money received under this subsection must be used solely for the benefit of any agency directly participating in the seizure or forfeiture for purposes consistent with federal laws and regulations."

*Klein,* 702 N.E.2d 771 (Ind.Ct.App.1998), *trans. denied,* to support his claim that his right against double jeopardy had been violated. In that case, we held that because the record did not show that the forfeiture of the defendant's vehicle—which he used to go to the victim's house in order to commit various offenses—compensated the State for its expenses in investigating the case and apprehending the defendant, the forfeiture was a "punishment." *Id.* at 774. To be sure, the trial court noted in its findings that "the sanction of taking and forfeiting Klein's vehicle served only the goal of punishment and served no remedial function, such as compensating the government for any loss." *Id.* at 774. Therefore, we concluded that the double jeopardy clause prohibited criminal prosecution on attempted rape and criminal confinement charges in light of the forfeiture. *Id.* at 774–75.

Notwithstanding the view expressed in *Klein,* a panel of this court recently observed that there is little doubt that our legislature intended forfeiture proceedings to be of a civil nature. *Willis v. State,* 806 N.E.2d 817, 821 (Ind.Ct.App.2004). We noted that the forfeiture statute is codified under a civil law title denominated "Civil Proceedings Related To Criminal Activities." *Id.* We further observed that even though the forfeiture statute is "not totally divorced from the criminal law," in that it requires the State to demonstrate that the property sought in forfeiture was used in connection with criminal activities, this particular fact was insufficient to render the statute punitive in nature. *Id.*

*Willis* aside, our supreme court has previously explained that forfeiture simultaneously advances other nonpunitive, remedial legislative goals. *Katner v. State,* 655 N.E.2d 345, 348 (Ind.1995). For instance, the *Katner* court observed that:

[F]orfeiture creates an economic disincentive to engage in future illegal acts. It also serves another significant, albeit secondary, purpose. Forfeiture advances our Legislature's intent to minimize taxation by permitting law enforcement agencies, via the sale of property seized, to defray some of the expense incurred in the battle against drug dealing. It is these broad remedial characteristics which support ... a determination that forfeiture actions are civil in nature.

*Id.* at 821.

■ We also note that the procedural mechanisms contained in the forfeiture statute further indicate our legislature's intention that such proceedings be civil. *See Willis,* 806 N.E.2d at 821. For instance, a conviction on the underlying criminal activity is not a prerequisite to forfeiture. *Id.* The State is required only to show that the facts supporting forfeiture exist by a preponderance of the evidence—a civil burden of proof. *Id.* (citing I.C. § 34–24–1–4(a)). The imposition of this civil standard of proof is strong evidence that the forfeiture statute was not intended to be a criminal sanction. *Id.* Hence, we can—and do—conclude that our legislature intended that the sanction of forefeiture be of a civil nature.

That said, we must go on to decide whether Davis has provided "the clearest proof" that these proceedings were so punitive in form and effect as to render them criminal despite our legislature's intent to the contrary. In making this determination, we apply the factors set forth in *Hudson* for guidance. *See Willis,* 806 N.E.2d at 821. Here, the complaint for forfeiture requested seizure of certain property that Davis acquired as a result of his racketeering activity and the profits he gained as a result of his actions. State's Ex. 6. Although the complaint also re-

quested that Davis pay $100,000 in punitive damages, the trial court did not order such a payment. Ex. 7. Rather, it is apparent that the trial court only ordered the seizure of property that was connected to Davis's racketeering activity. And the proceeds from the sale of that property were to be used to subsidize law enforcement expenses. Ex. 6 and 7. We also note that the State is not required to demonstrate scienter in order to establish that the property is subject to forfeiture. As we have previously determined, a scienter requirement is customarily an important element that distinguishes criminal from civil statutes. *See id.* at 823. Additionally, while our forfeiture statute may fairly be said to serve the purpose of deterrence by making certain criminal endeavors unprofitable, the United States Supreme Court has held that deterrence may serve civil as well as criminal goals. *See Ursery,* 116 S.Ct. at 2135. As a result, it is our view that Davis has failed to present the "clearest proof" that our forfeiture statute is so punitive in form and effect as to render it criminal in these circumstances. Accordingly, Davis's trial counsel cannot be deemed ineffective for failing to raise a double jeopardy issue at trial. Similarly, because we have determined that Davis did not receive ineffective assistance of trial counsel, he can neither show deficient performance nor resulting prejudice as a result of his appellate counsel's failure to raise this argument on appeal. *See Smith v. State,* 792 N.E.2d 940, 946 (Ind.Ct.App. 2003), *trans. denied* (holding that where trial counsel was not ineffective for failing to tender lesser-included instruction on ag-

gravated battery where attempted murder was the charge, appellate counsel was not ineffective for failing to raise issue on direct appeal). As a result, there was no error in denying Davis's petition for post-conviction relief.

The judgment of the post-conviction court is affirmed.[7]

SHARPNACK, J., and FRIEDLANDER, J., concur.

---

**7.** Notwithstanding our disposition of this case, we note that the State might be well advised to seek imprisonment, fines and forfeiture in one proceeding. As Judge Easterbrook observed in *United States v. Torres,* "If the prosecutor had sought both forfeiture and imprisonment via the same indictment, [the defendant's] argument would be a nonstarter. For the double jeopardy clause does not bar cumulative punishments imposed in a single proceeding—whether these punishments be the ordinary combination of prison plus a fine, or consecutive terms in prison, or prison plus a forfeiture." 28 F.3d 1463, 1464–65 (7th Cir.1994).