Timothy McCARTHY, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 37A04–9903–CR–108.

Court of Appeals of Indiana.

March 30, 2000.

Transfer Granted June 8, 2000.

Marce Gonzalez, Jr., Merrillville, Indiana, Larry W. Rogers, Valparaiso, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Timothy McCarthy was found guilty by a jury of one count of sexual misconduct with a minor as a Class B felony and one count of sexual misconduct with a minor as a Class C felony. The trial court ordered an enhanced sentence of thirteen years for the Class B felony and an enhanced sentence of five years for the Class C felony, which sentences were ordered to be served consecutively. McCarthy appeals his convictions and resulting sentence. We reverse.

### Issues [1]

McCarthy raises five issues for our review, of which we find the following dis-

---

1. Although we do not address the sentencing issue raised by McCarthy due to the disposi-

tive nature of the other issues raised, we note that to the extent the trial court relied on

positive: whether the trial court properly limited McCarthy's cross-examination of an alleged victim's mother and excluded evidence that she had filed a notice of tort claim against the school corporation which employed McCarthy and possibly intended to file a lawsuit against McCarthy personally.

## Facts and Procedural History [2]

The facts most favorable to the verdict reveal that in the fall of 1997, McCarthy was a music teacher and band director at Kankakee Valley High School. On November 4, 1997, McCarthy told his fifteen year old student assistant, M.T., that he needed to speak with her and arranged to meet her in the faculty bathroom. Once in the bathroom, McCarthy locked the door, kissed M.T., exposed and touched her breasts, exposed himself, and attempted to make her touch his penis. M.T. refused and McCarthy unlocked the door and let her out of the bathroom.

Also on November 4, 1997, McCarthy and a fifteen year old student, K.G., engaged in a game of "strip perdiddle" while McCarthy drove K.G. home. "Perdiddle" is usually played by spotting cars with one headlight out. Because it was daylight, however, they played "perdiddle" with white mailboxes instead of headlights: the first person to spot a white mailbox and say "perdiddle" told the other player to remove a specific article of clothing. When both McCarthy and K.G. were naked, McCarthy had K.G. stroke his penis, he touched her breasts and penetrated her vagina with his finger, and he attempted intercourse but was unable to complete the act.

McCarthy was charged with two counts of sexual misconduct with a minor by information filed November 14, 1997. A jury trial was held in June of 1998, which ended in a mistrial due to the jury's inability to reach a unanimous verdict. A new trial was scheduled for November of 1998.

At the November re-trial, a jury found McCarthy guilty of both counts of sexual misconduct with a minor. McCarthy was subsequently sentenced to an enhanced sentence of thirteen years for the Class B felony and five years for the Class C felony, which sentences were ordered to be served consecutively. Additional facts will be provided as necessary.

## Discussion and Decision
### Limitation of Cross–Examination

McCarthy contends that the trial court erred in limiting his cross-examination of M.T.'s mother regarding the fact that she had filed a notice of tort claim against the school corporation for McCarthy's alleged actions and possibly intended to file a lawsuit against McCarthy personally and therefore had a potential financial interest in the outcome of this case.

### A. Standard of Review

A defendant's Sixth Amendment right of confrontation assures him the opportunity to conduct an effective cross-examination of the State's witnesses against him in order to test their believability. *Thornton v. State,* 712 N.E.2d 960,

---

generalities regarding sex offenders in making its sentencing determination, this would be error. *See Bluck v. State,* 716 N.E.2d 507, 512 (Ind.Ct.App.1999) ("There is literature indicating that typical sex offenders cannot be rehabilitated until they admit their behavior. However, when sentencing a particular defendant, profile evidence regarding the 'average' child molester may or may not be probative. While [the defendant's] character is at issue, the court must base its sentencing decision on factors attributable specifically to him rather than on his identification with a general class or category of offenders.") (citation omitted).

Moreover, the type of conduct with which the State charges the defendant is what determines the severity of the crime and the sentencing parameters. Thus, the nature of the crime is already taken into account by the legislature in the sentencing statutes.

2. Oral argument was heard in this case on March 2, 2000, at Wabash College. We extend our appreciation to the students, faculty, and administration of the college for their interest and hospitality.

963 (Ind.1999). This right is subject to reasonable limitations placed upon the cross-examination at the discretion of the trial judge. *Id.* However, the trial court's exercise of its discretion in determining the permissible scope of cross-examination to test the credibility of a witness must be consistent with due process. *McIntyre v. State*, 460 N.E.2d 162, 165–66 (Ind.Ct.App. 1984). Thus,

> [w]here the record reflects a curtailment of a requested line of bias cross-examination *in limine*, so that the jury is unable properly to perform its fact-finding function in inferring bias from the testimony as a whole, we will assess cross-examination errors by a per se error standard.... If, however, the trial court has permitted some cross-examination so that the jury has sufficient information from which to infer bias (should it so choose), this court will evaluate error by application of the harmless constitutional error test....

*Haeger v. State*, 181 Ind.App. 5, 390 N.E.2d 239, 241 (1979) (quoting *Springer v. United States*, 388 A.2d 846, 856 (D.C. 1978)).

### B. Jodi Cooper's Testimony

At trial, M.T.'s mother, Jodi Cooper, testified. McCarthy's counsel sought to inquire on cross-examination into the fact that Cooper had filed a notice of tort claim against the school corporation and possibly intended to file a lawsuit against McCarthy personally based upon the same alleged actions for which McCarthy was on trial. Counsel asked Cooper, "how much money are you going to make, or do you seek to get because of [this]?" R. 1403. The State objected, and the trial court sustained the objection. Counsel then made an offer to prove, during which he stated that "if this witness were allowed to answer this question, she would indicated [sic] that a Notice of Tort Claim has been filed against the Kankakee Valley School Corporation seeking damages from the school corporation and perhaps Mr.

McCarthy personally...." R. 1403. The trial court stated that it would only reconsider its ruling if McCarthy "can show a substantial deviation from her prior testimony that might have been shaded because she's trying to aide [sic] her lawsuit...." R. 1404. The trial court also stated:

> [w]hat has happened subsequent, as you well know, either you meet the statutory guidelines for a tort claim against an administrative agency or you lose it.... [W]hether or not she sues or whether or not she's filed a complaint is not an issue at this point.... Because it's the same as raising your constitutional right to remain silent. You can't use someone's raising their legal – having done something to protect their legal rights against them. It seems to be the same analogy.

R. 1404–05.

### C. Evidence of Bias or Financial Motive

 McCarthy contends that the trial court erred in limiting his cross-examination of Ms. Cooper regarding her financial interest in the outcome of this criminal prosecution. "Any fact tending to impair the credibility of a witness by showing his interest is a material matter regarding which cross-examination is a right and not a mere privilege, and a denial of cross-examination upon such a material matter is reversible error." *Acker v. State*, 239 Ind. 466, 158 N.E.2d 790, 791 (1959). However, an actual infringement of cross-examination must be shown and the defendant must also show how the forbidden subject related to the credibility of the witness. *Lagenour v. State*, 268 Ind. 441, 376 N.E.2d 475, 479 (1978). A witness' credibility may be affected by financial considerations and thus, such considerations may be a proper subject for cross-examination. *Domangue v. State*, 654 N.E.2d 1, 3 (Ind.Ct.App.1995). "If a witness in a criminal trial has a financial motive for testifying in a certain fashion, the jury should hear about those matters

as they are relevant evidence of credibility." *Id.*

In *Kleinrichert v. State,* 530 N.E.2d 321 (Ind.Ct.App.1988), *trans. denied,* this court reversed the defendant's conviction for possession of cocaine and held that the jury was "not able to properly perform its fact finding function because relevant evidence was excluded by the trial court." *Id.* at 323. The "relevant evidence" was evidence that the defendant had filed a tort claim notice against the county sheriff's department for false arrest and his stated intention to sue Detective Kitch personally. The trial court excluded all evidence of pending or contemplated lawsuits and evidence of animosity between the defendant and Kitch. This court held that such evidence may have demonstrated bias, prejudice, and interest in the outcome of the case on the part of Kitch and may have affected the jury's evaluation of Kitch's credibility. This was especially important because there was a conflict in the testimony of Kitch and the confidential informant. Thus, we applied the per se error standard and reversed the defendant's conviction.

Similarly, in *Pfefferkorn v. State,* 413 N.E.2d 1088 (Ind.Ct.App.1980), this court reversed convictions of theft and burglary because the trial court improperly restricted *in limine* cross-examination regarding possible bias or prejudice of the investigating officer. *Id.* at 1090. The defendant urged that evidence that members of his family had been involved in an automobile accident with the county sheriff's department and had instituted a civil lawsuit against the department might show a bias or hostility against him and his family which would be a motive to overzealously investigate him. This court agreed, holding that the witness, the investigating officer, was crucial and that the defendant was wholly precluded from pursuing his line of questioning and presenting this evidence to the jury. Thus, application of the per se error rule was appropriate, and the convictions were reversed.

In this case, too, we have a total curtailment of cross-examination on an issue which could expose potential bias of the witness due to her financial interest in the outcome of the criminal case. Neither of the two reasons given by the trial court for curtailing the cross-examination on this issue justify such a curtailment. The State conceded at oral argument that in such situations in the past, the per se rule has been properly applied, but urges that in this case, we either disapprove the line of cases following *Haeger* and decline to apply the per se rule or distinguish this case on its facts from the *Haeger* line of cases and apply the harmless error rule instead. We decline to do so.

■ The only point on which this case is factually distinguishable from *Kleinrichert* or *Pfefferkorn* is that in both of those cases, the witness whose bias was not allowed to be inquired into was the prosecuting witness, and here, Ms. Cooper had no first-hand knowledge of the events giving rise to the charges against McCarthy. Nonetheless, the State chose to call Ms. Cooper as a witness in its case-in-chief seeking what benefit it could gain from her testimony, but the defense was not then allowed to offset that benefit by evidence which properly could have detracted from that testimony. The jury was only allowed to hear from the potentially sympathetic mother of an alleged victim, not the potential recipient of a financial settlement or award. On the record before us, we find a curtailment of a requested and proper line of bias cross-examination leaving the jury unable to properly perform its function of determining whether that bias affected the testimony as a whole. Thus, we hold this constitutes reversible error, and we grant McCarthy a new trial.[3]

---

3. McCarthy also raised the issue of whether the trial court erred in admitting evidence of McCarthy's alleged romantic interest in the mother of one of the victims. McCarthy made a persuasive case at oral argument that this evidence was outside the scope of permis-

Reversed.[4]

BROOK, J., and NAJAM, J., concur.

sible 404(b) evidence. However, although McCarthy filed a pre-trial motion *in limine* to exclude such evidence, he did not object to this testimony during the trial. *See* R. 1159–61, 1377–83. In order to preserve error in the overruling of a pre-trial motion *in limine*, the appealing party must have objected to the admission of the evidence at the time it was offered or the argument is waived. *Robinson v. State*, 720 N.E.2d 1269, 1271 (Ind.Ct.App. 1999).

4. We acknowledge that McCarthy was convicted of two counts of sexual misconduct –

one count for alleged misconduct related to M.T. and the other for alleged misconduct related to K.G. Although the curtailed cross-examination which we find to be reversible error herein related most directly to M.T., as it was her mother's testimony which was affected, the two cases are integrally related not only in factual terms, but also in terms of the way in which they were tried. Therefore, it would be pure speculation on our part to say that the excluded evidence affected only one case. Accordingly, we reverse both convictions.