Timothy McCARTHY, Jr.,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 37S04–0006–CR–359.

Supreme Court of Indiana.

June 28, 2001.

Marce Gonzalez, Jr., Merrillville, IN, Larry W. Rogers, Valparaiso, IN, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**On Petition to Transfer**

RUCKER, Justice.

### Case Summary

A jury convicted Timothy McCarthy of one count of sexual misconduct with a minor as a Class B felony and one count of sexual misconduct with a minor as a Class C felony. On initial review McCarthy raised several issues. Finding one issue

dispositive, the Court of Appeals reversed the convictions and remanded the cause for a new trial. More specifically, the Court of Appeals determined that the trial court erred in limiting McCarthy's right to cross-examine a witness on the question of bias and that the error was per se reversible. *McCarthy v. State,* 726 N.E.2d 789 (Ind.Ct.App.2000). We agree the trial court erred. However, we conclude the error was harmless. We grant transfer on this point and also address the remaining issues which we restate as follows: (1) did the trial court erroneously admit evidence of McCarthy's prior bad acts; (2) did the trial court err in denying McCarthy's motion for a change of venue; (3) was the evidence sufficient to support the convictions; and (4) did the trial court err in imposing enhanced and consecutive sentences. We affirm the trial court.

### Facts

The facts most favorable to the verdict show that in the fall of 1997, McCarthy was employed as a music teacher and band director at Kankakee Valley High School. K.G. and M.T. attended the school as fifteen-year-old sophomore students. Both participated in the school band and served as McCarthy's student assistants. On November 4, 1997, McCarthy told M.T. that he needed to speak with her and arranged for her to meet him in the faculty bathroom. Once inside, McCarthy locked the door, kissed M.T., exposed and touched her breasts, exposed himself, and encouraged M.T. to touch his penis. M.T. refused, and the encounter ended when McCarthy unlocked the door and M.T. left the bathroom.

Later that same day, traveling isolated roads, McCarthy drove K.G. home from school. While en route they played a game the parties referred to either as "perdiddle" or "strip perdiddle," which required participants to remove articles of clothing. After both McCarthy and K.G. were nude, McCarthy pulled to the side of the road where K.G. stroked his penis, and he touched her breasts and placed his finger in her vagina. McCarthy also attempted to engage K.G. in sexual intercourse but was not successful. When a car approached, both scrambled to get dressed. McCarthy then proceeded to take K.G. home.

That evening K.G. and M.T. talked with each other over the telephone and discussed the day's events. A couple of days later, the two students confronted McCarthy and told him they regretted what they had done and that it never should have happened. McCarthy became angry and told the students not to pretend they were victims and that they had voluntarily engaged in the encounters. Shortly thereafter, the students reported McCarthy's conduct to school officials.

On November 14, 1997, McCarthy was charged with two counts of sexual misconduct with a minor: Count I as a Class B felony concerning his conduct with K.G. and Count II as a Class C felony concerning his conduct with M.T. A trial conducted in June 1998 ended in a hung jury, and the trial court declared a mistrial. The second trial began in November 1998. In its case-in-chief upon retrial, the State called M.T.'s mother to the stand. On cross-examination, the following exchange occurred:

Q. Mrs. Cooper, you have a lot of animosity towards Mr. McCarthy, and rightfully so. Right?

A. For him molesting my daughter? Yes, I do.

Q. Uh, how much money are you going to make, or do you seek to get because of that?

R. at 1402–03. At this juncture, the State objected, and the trial court sustained the

objection. Outside the presence of the jury, McCarthy made the following offer of proof:

> Your Honor, I believe if this witness were allowed to [ ] answer this question, she would indicate[ ] that a Notice of Tort Claim has been filed against [ ] the Kankakee Valley School Corporation [ ] seeking damages from the school corporation and [ ] perhaps Mr. McCarthy personally, and I believe that that goes to the bias and/or prejudice of the witness, and is an appropriate subject for cross-examination.

R. at 1403. The trial court reaffirmed its ruling, prohibited McCarthy from pursuing this line of inquiry, and admonished the jury to disregard counsel's question. Ultimately the jury returned a verdict of guilty as charged. The trial court sentenced McCarthy to enhanced and consecutive terms of thirteen years for the Class B felony and five years for the Class C felony. On direct appeal, the Court of Appeals concluded that the trial court erred in denying McCarthy the opportunity to cross-examine Mrs. Cooper on the question of her potential bias due to her financial interest in the outcome of this case. Applying a per se error standard, the Court of Appeals reversed the conviction and remanded the cause for a new trial. The State seeks transfer. We affirm the trial court's judgment.

### Discussion

#### I.

■ The right to cross-examine witnesses is guaranteed by the Sixth Amendment to the United States Constitution as well as Article 1, Section 13 of the Indiana Constitution. It is "one of the fundamental rights of our criminal justice system." *Pigg v. State*, 603 N.E.2d 154, 155 (Ind. 1992). It is true "this right is subject to reasonable limitations placed at the discretion of the trial judge." *McQuay v. State*,

566 N.E.2d 542, 543 (Ind.1991). However, the trial court's exercise of discretion in determining the permissible scope of cross-examination to test the credibility of a witness must be consistent with due process. *Timberlake v. State*, 690 N.E.2d 243, 255 (Ind.1997). If a witness in a criminal trial has a financial motive for testifying in a certain fashion, then the jury should hear about those matters because they are relevant to the question of the witness' credibility. *Domangue v. State*, 654 N.E.2d 1, 3 (Ind.Ct.App.1995); *see also Bryant v. State*, 233 Ind. 274, 118 N.E.2d 894, 896 (1954) (declaring that cross-examination of a witness who is motivated by financial concerns is properly considered as it affects the credibility of that witness' testimony). In this case, denying McCarthy the opportunity to cross-examine Mrs. Cooper about an event that the jury may have determined furnished her with a motive for favoring the prosecution violated the Confrontation Clause and thus was error. The question however is whether the error automatically requires reversal.

■ There is authority for the proposition that a court of review has at its disposal two alternative courses of action when evaluating claims concerning the denial of the right to cross-examine witnesses. According to *Haeger v. State*, 181 Ind.App. 5, 390 N.E.2d 239 (1979), where the trial court permits "some" cross-examination on the question of witness bias, a court of review should evaluate the error "by the application of the harmless constitutional error test." *Haeger*, 390 N.E.2d at 241. On the other hand, where the record reflects a "curtailment" of cross-examination on the question of witness bias, then a court of review should assess such error by a "per se error standard." *Id.* (quoting *Springer v. United States*, 388 A.2d 846, 856 (D.C.1978)); *accord Tucker*

*v. State,* 728 N.E.2d 261, 262 (Ind.Ct.App. 2000), *trans. denied; Kleinrichert v. State,* 530 N.E.2d 321, 322 (Ind.Ct.App.1988); *Higginbotham v. State,* 427 N.E.2d 896, 901 (Ind.Ct.App.1981), *overruled on other grounds by Micinski v. State,* 487 N.E.2d 150 (Ind.1986); *Pfefferkorn v. State,* 413 N.E.2d 1088, 1090 (Ind.Ct.App.1980). In sum, under *Haeger* and its progeny, where a defendant has been denied any opportunity to cross-examine a witness on the question of bias, then the error is reversible per se. It is this authority upon which McCarthy relied in advancing his argument that because the trial court's ruling resulted in a curtailment of his right to cross-examine Mrs. Cooper, his conviction must be reversed. Since *Haeger,* the United States Supreme Court has addressed the question of the appropriate standard for reviewing a defendant's claim alleging the denial of his Sixth Amendment right to cross-examine witnesses:

> [T]he constitutionally improper denial of the defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* [*Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.

*Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)[1] (ruling that the trial court violated defendant's rights secured by the Confrontation Clause by prohibiting all inquiry into the possibility that a prosecution witness would be biased as a result of the State's dismissal of his pending public drunkenness charge). In two fairly recent decisions, this Court has followed *Chapman* and *Van Arsdall. See Smith v. State,* 721 N.E.2d 213, 219 (Ind.1999) ("[V]iolations of the right to cross-examine are subject to harmless-error analysis."); *Standifer v. State,* 718 N.E.2d 1107, 1110 (Ind.1999) (ruling that even though the defendant was denied the opportunity to fully cross-examine two State's witnesses concerning their bias in favor of the State, "his convictions will not be reversed if the State can demonstrate beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (quotation omitted)). Because prevailing case authority dictates a harmless error analysis, we disapprove of language in those cases suggesting that violations of a defendant's right to cross-examine witnesses is subject to a per se error standard on appeal.

◼ In his Brief in Opposition to Transfer, McCarthy acknowledges *Standifer* and *Smith.* He argues, however, that even under a harmless error standard of review, his conviction should be reversed and this cause remanded for a new trial.[2] Accord-

1. In *Bassil v. United States,* 517 A.2d 714, 717 n. 5 (D.C.1986), the court acknowledged that *Van Arsdall* effectively overruled its decision in *Springer.* It was the *Springer* decision upon which *Haeger* relied.

2. Pointing out that the State raised the question of harmless error for the first time in its Petition to Transfer, McCarthy complains that the issue should be deemed waived because the State failed to raise it either in its Brief of Appellee or at oral argument before the Court of Appeals. The waiver rule does not apply in

this context. Transfer is an administrative term this Court has attached to the process of retaining control over this Court's declaration of law function. Ind. Appellate Rule 58 (formerly App.R. 11); *Tyson v. State,* 593 N.E.2d 175, 180 (Ind.1992). A part of that function includes addressing a petitioner's allegation that an "opinion or memorandum decision of the Court of Appeals contravenes a ruling precedent of the Supreme Court...." App.R. 11(B)(2)(a) (now App.R. 57(H)(2)). Although the better practice may have been for the

ing to McCarthy, this case represents a credibility contest between him and the two students and that Mrs. Cooper's testimony was critical to the State's case because it served to bolster the students' credibility.

Whether the trial court's error is harmless depends on several factors including:

[T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431; *accord Munn v. State*, 505 N.E.2d 782, 786 (Ind.1987). As with most cases involving claims of child molestation, here the credibility of witnesses was a key issue at trial. Indeed, McCarthy testified on his own behalf and essentially denied that he ever inappropriately touched any student including M.T. or K.G. He also denied playing a game known as "strip perdiddle." R. at 2044. Further, he portrayed himself as a professional and a "strict disciplinarian." R. at 1967. By contrast, both K.G. and M.T. testified that McCarthy molested them. In addition, contrary to McCarthy's assertion, two other former students of Kankakee Valley High School, C.G. and J.K., testified that they played the game "strip perdiddle" while on a trip to Michigan with McCarthy prior to November 4, 1997. R. at 1625, 1734. Several students also testified about McCarthy's frequent and pointed sexual comments concerning the bodies of female students. R. at 1457–

58, 1482–83, 1538, 1622–23, 1674, 1767, 2145–46. Thus, from the standpoint of credibility, the State's case was relatively strong. As for Mrs. Cooper's testimony, although it may have been important to the State's case, we disagree with McCarthy's assertion that her testimony was critical. She was not an occurrence witness, and the material point of her testimony, as McCarthy points out, was to "describe her daughter's demeanor before and after the alleged incident with McCarthy." Br. in Opposition to Transfer at 6 (citing R. at 1386–1401). Among other things, Mrs. Cooper testified that before this incident, her daughter was outgoing, happy, had a good sense of humor, and was fun to be around. R. at 1368. She testified that after this incident, M.T. was "very depressed[,] ... cried a lot[,] ... [and] was [ ] very distraught." R. at 1399. Another witness corroborated Mrs. Cooper's testimony. R. at 1677. Also, the record shows that other than the trial court limiting the questioning concerning the Tort Claims Notice, McCarthy's cross-examination of Mrs. Cooper was thorough and unlimited. R. at 1406–21. Among other things, McCarthy confronted Mrs. Cooper with discrepancies concerning details of her account of events versus those about which M.T. testified, and he questioned Mrs. Cooper on whether she helped her daughter prepare for her trial testimony. The effect of this line of questioning was to demonstrate Mrs. Cooper's bias and to imply that M.T. fabricated her charge.

In sum, although the trial court erred in limiting McCarthy's cross-examination, the error was harmless. We are satisfied that the State has demonstrated beyond a rea-

State to have raised this issue before the Court of Appeals, nothing in the rules prohibits this Court from addressing the State's claim.

Also, we deny McCarthy's request to submit additional briefing on the question of harmless error. His Brief in Opposition to the State's Petition to Transfer fully explores this issue and no additional briefing is necessary.

sonable doubt that the exclusion of evidence that Mrs. Cooper may have had a financial motive in testifying at trial did not contribute to the jury's verdict. Accordingly, McCarthy is not entitled to reversal of his convictions.

## II.

McCarthy also complains that the trial court erred in admitting into evidence what he characterizes as "alleged uncharged sexual misconduct and bad acts by the defendant." Br. of Appellant at 16. This complaint centers on testimony concerning the trip to Michigan where the parties played the "strip perdiddle" game and testimony that McCarthy allegedly expressed amorous interests in Mrs. Cooper.

A claim of error in the exclusion or admission of evidence will not prevail on appeal unless the error affects the substantial rights of the moving party. *Gant v. State*, 694 N.E.2d 1125, 1129 (Ind.1998) (citing Ind. Evidence Rule 103(a)). When reviewing such claims, an appellate court determines whether the trial court abused its discretion when it ruled upon the evidence. *Id.*

### A.

Prior to trial, the State gave notice that it intended to introduce testimony regarding the "strip perdiddle" incident. McCarthy filed a motion in limine seeking to prohibit introduction of the evidence, and the trial court denied the motion. Over McCarthy's objection, testimony concerning "strip perdiddle" and the Michigan trip were introduced at trial. On appeal, McCarthy complains that this evidence portrayed him as a sexual predator and was inadmissible under Indiana Rule of Evidence 404(b) and our decision in *Lannan v. State*, 600 N.E.2d 1334, 1339 (Ind. 1992) (abandoning the "depraved sexual

instinct" exception to the general rule prohibiting evidence of prior bad acts).

McCarthy paints with too broad a brush. The Rule provides "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Evid.R. 404(b). The Rule is designed to prevent the jury from making the "forbidden inference" that prior bad conduct suggests guilt in the present action. *Barker v. State*, 695 N.E.2d 925, 930 (Ind.1998). First, it is not at all clear to us that the "strip perdiddle" activity represents "other crimes, wrongs, or acts" within the meaning of 404(b). In any event, we disagree that the evidence was introduced for the forbidden inference. Rather, it was introduced to show that McCarthy had knowledge of the existence of "perdiddle" or "strip perdiddle"—something he consistently denied. The evidence was relevant because it was after engaging in this activity that K.G. testified McCarthy molested her. Its probative value outweighed any prejudicial impact because if, as McCarthy maintained, he had never heard of the game and had certainly never played it, then it would appear that K.G.'s testimony was made of whole cloth. Evidence that McCarthy apparently played this "game" with students on an earlier occasion certainly went to the heart of McCarthy's defense. However, it was not rendered inadmissible by Evidence Rule 404(b).

### B.

As for evidence indicating that McCarthy may have had an amorous interest in Mrs. Cooper, it is again unclear to us how such evidence represents "other crimes, wrongs, or acts" within the mean-

ing of 404(b). Be that as it may, the record shows that although McCarthy filed a motion in limine seeking to exclude such evidence, R. at 692–93, which the trial court denied, McCarthy did not object when the evidence was introduced at trial. A ruling on a motion in limine does not determine the ultimate admissibility of the evidence. *Cook v. State,* 734 N.E.2d 563, 568 n. 2 (Ind.2000). Rather, the trial court in the context of the trial itself makes the determination. *Id.* This Court has consistently held that a party may not assert on appeal a claim of trial court error in the overruling of a motion in limine seeking the exclusion of evidence unless the party objected to the evidence at the time it was offered. *Sisk v. State,* 736 N.E.2d 250, 251 (Ind.2000); *White v. State,* 687 N.E.2d 178, 179 (Ind.1997); *Clausen v. State,* 622 N.E.2d 925, 927 (Ind.1993); *Conner v. State,* 580 N.E.2d 214, 220 (Ind.1991). This issue is waived for review.

### III.

■ McCarthy next complains the trial court erred in denying his motion for a change of venue. At a hearing on the motion, McCarthy introduced a survey conducted of Jasper County citizens indicating there was significant bias against him among potential jurors. McCarthy also introduced numerous newspaper articles that reported on his first trial and testimony that McCarthy required police protection during and immediately after his first trial.

■ A defendant is entitled to a change of venue upon showing the existence of prejudicial publicity and that jurors will be unable to disregard preconceived notions of guilt and render a verdict based upon the evidence. *Wethington v. State,* 560 N.E.2d 496, 504 (Ind.1990). A trial court's denial of a motion for a change of venue will be reversed only for an abuse

of discretion. *Barnes v. State,* 693 N.E.2d 520, 523–24 (Ind.1998). Showing potential juror exposure to press coverage is not enough. *Elsten v. State,* 698 N.E.2d 292, 294 (Ind.1998). The defendant must demonstrate that the jurors were unable to disregard preconceived notions of guilt to render a verdict based upon the evidence. *Id.*

■ The record here shows that each juror that was ultimately selected to serve indicated that he or she could render a verdict based upon the evidence presented at trial. R. at 514–690. Those potential jurors who indicated they could not render a verdict based upon the evidence were excused for cause. R. at 515–16, 518, 519–20, 521–22, 530, 531, 536, 552, 554–55, 561, 562, 573, 596–97, 607, 609, 629, 637–38, 650–52. The trial court does not abuse its discretion in denying a motion for change of venue where there is no showing that jurors are unable to set aside preconceived notions of guilt and render a verdict based upon the evidence. *See Specht v. State,* 734 N.E.2d 239, 241 (Ind.2000). There was no abuse of discretion here.

### IV.

■ McCarthy also complains that his convictions are not supported by sufficient evidence. When reviewing a claim of insufficient evidence, we do not reweigh the evidence or assess the credibility of the witnesses. *Albrecht v. State,* 737 N.E.2d 719, 731 (Ind.2000), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

■ McCarthy's contention on this issue centers on the testimony of K.G. and

M.T., which he characterizes as "[inherently] incredible given the totality of the circumstances...." Br. of Appellant at 33. McCarthy seeks to invoke the "incredible dubiosity rule" under which this Court will impinge upon the jury's responsibility to judge witness credibility only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994); *Gaddis v. State,* 253 Ind. 73, 251 N.E.2d 658, 661–62 (1969). "Application of this rule is limited to cases, such as *Gaddis,* where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Tillman,* 642 N.E.2d at 223.

Reciting the victims' testimony, McCarthy essentially complains the events could not have happened the way the victims described them. He does not argue their testimony was the result of coercion, and the record shows neither witness was equivocal nor did they give inherently contradictory testimony. Rather, the record shows that even though McCarthy thoroughly cross-examined both witnesses, they nonetheless did not waiver in their account of events. R. at 852–961, 980–95, 1273–1339. The incredible dubiosity rule is simply not applicable here. *See, e.g., Berry v. State,* 703 N.E.2d 154, 160 (Ind. 1998) (declining to apply the rule even though there were inconsistencies in the testimony among witnesses but no one witness contradicted himself).

A conviction may be supported by the uncorroborated testimony of one witness or by circumstantial evidence alone. *Frederick v. State,* 658 N.E.2d 941, 944 (Ind.Ct.App.1995). It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve. *Marshall v. State,* 621 N.E.2d 308, 320 (Ind.1993). If the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court should not disturb it. In this case, the jury heard the testimony of K.G. and M.T. as well as the testimony of McCarthy. The jury apparently believed the two students. As set forth in the facts section of this opinion, their testimony was sufficient to support guilty verdicts for one count of child molesting as a Class B felony and one count of child molesting as a Class C felony.

## V.

The trial court sentenced McCarthy to thirteen years imprisonment for the Class B felony conviction, which is three years beyond the presumptive term, and five years for the Class C felony, which is one year beyond the presumptive term. In so doing the trial court identified four aggravating factors: (1) the age of the victims; (2) the effect of the crime on the lives of the victims and their families; (3) McCarthy's position of trust with the victims; and (4) the likelihood that McCarthy would repeat his conduct. The trial court also listed three mitigating factors: (1) the lack of any criminal history; (2) an extended sentence would result in personal hardship to McCarthy's family; and (3) an extended sentence would result in financial hardship to McCarthy's family.

McCarthy mounts a multi-prong attack challenging his sentence. First, he contends the age of the victims in this case is not a valid aggravator and, according to McCarthy, there is insufficient evidence in the record to support the trial court's finding that McCarthy is likely to engage in this conduct again. Having eliminated two aggravators, McCarthy reasons, there are now only two valid aggravating factors weighed against three mitigating factors.

According to McCarthy, one of the mitigators, lack of criminal history, should be given "substantial mitigating weight." Reply Br. of Appellant at 16 (quoting *Loveless v. State*, 642 N.E.2d 974, 976, (Ind. 1994)). Second, McCarthy complains that the trial court was obligated to explain which specific aggravating factor provided the basis for the enhanced sentence and why consecutive sentences are appropriate. Because the court provided no such explanation, McCarthy argues the trial court apparently relied on matters outside the record which, according to McCarthy, was the basis for the trial court's comment at sentencing that he needs something "to hang my hat [on]." R. at 2366. Finally, as a part of his attack, McCarthy contends that his sentence is manifestly unreasonable and urges us to revise his sentence to the presumptive term to be served concurrently.

■■■ The decision to enhance a presumptive sentence or to impose consecutive sentences for multiple offenses is generally within the trial court's discretion. *Brown v. State*, 698 N.E.2d 779, 781 (Ind. 1998). A single aggravating factor may be sufficient to support an enhanced sentence. *Garrett v. State*, 714 N.E.2d 618, 623 (Ind. 1999). And the same factors may be used both to enhance a presumptive sentence and to justify consecutive sentences. *Miller v. State*, 716 N.E.2d 367, 371 (Ind. 1999). Thus, contrary to McCarthy's assertion, the trial court was not obligated to identify the factors that support the sentence enhancements separately from the factors that support consecutive sentences; nor was the trial court required to identify separate factors to support each sentence enhancement. *See Blanche v. State*, 690 N.E.2d 709, 715 (Ind.1998) (finding two aggravating factors sufficient to support enhanced sentences for attempted murder, carrying a handgun without a license, and

resisting law enforcement); *Williams v. State*, 690 N.E.2d 162, 172 (Ind.1997) (finding same three aggravating factors justified enhanced sentences for murder and conspiracy to commit murder).

■■■ When the age of a victim constitutes a material element of the crime, then the victim's age may not also constitute an aggravating circumstance to support an enhanced sentence. *Stewart v. State*, 531 N.E.2d 1146, 1150 (Ind.1988). However, the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors. *Id.* In this case, the age of the victims, both under sixteen, was a material element of both the Class C and Class B felony offenses. However, the trial court did not set forth any particularized circumstance that would justify relying on the victims' ages as aggravating circumstances. We agree with McCarthy that this aggravator is inappropriate. McCarthy is wrong, however, in his assessment that there is no evidence to support the trial court's finding that he is likely to reoffend. To the contrary, at the sentencing hearing the State called to the stand another of McCarthy's former female students. The witness testified that she and McCarthy were engaged in a sexual relationship that first began when she was a sixteen-year-old high school junior, two years before the molestations in this case, and continued until her freshman year at college. R. at 2292–2319. Thus, contrary to McCarthy's assertion, there are three valid aggravators and three valid mitigators. And even accepting as true McCarthy's observation that this Court has held the lack of criminal history should be given substantial mitigating weight, *see Loveless*, 642 N.E.2d at 976, that does not mean lack of criminal history automatically outweighs any valid aggravating circumstance. Rather, it is a balancing test.

The trial court's finding that McCarthy's position of trust with the victims and the likelihood he would re-offend are two aggravating factors that should be given substantial aggravating weight. Indeed in this case, the trial court very well could conclude that the aggravating factors outweighed the mitigating factors in spite of the fact that one of the aggravators was invalid. *See, e.g., Walter v. State,* 727 N.E.2d 443, 447 (Ind.2000) ("Even when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist.").

Finally, we reject McCarthy's invitation to revise his sentence. Although this Court is empowered to review and revise criminal sentences, we will not do so unless the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." *Prowell v. State,* 687 N.E.2d 563, 568 (Ind. 1997). An eighteen-year sentence, imposed for molesting two young students over whom McCarthy held a position of trust, is not manifestly unreasonable.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.