## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2018, 11:12 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen M. Heard
Vanderburgh County Public Defender's Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard W. Shelton,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 30, 2018

Court of Appeals Case No.
18A-CR-1075

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge

Trial Court Cause No.
82C01-1705-F1-2949

**Najam, Judge.**

# Statement of the Case

Richard W. Shelton appeals his sentence following his guilty plea to rape, as a Level 1 felony; attempted aggravated battery, as a Level 3 felony; criminal confinement, as a Level 3 felony; domestic battery, as a Level 5 felony; and possession of a narcotic, as a Level 6 felony. He raises two issues for our review, which we restate as follows:

1. Whether the trial court abused its discretion when it sentenced him.

2. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

# Facts and Procedural History

On May 14, 2017, Shelton was at home with his wife, L.S., and their four-year-old daughter. At approximately 2:00 p.m., Shelton's mother picked up the child in order to watch her. At that time, Shelton and L.S. began to argue. Soon after the argument began, Shelton hit L.S. and told her that he was going to kill her. Shelton threw L.S. into the shower, urinated on her, and cut off approximately seven inches of her hair with a knife. Shelton then poured lighter fluid on her and lit his lighter in front of her. He then punched L.S. in the stomach, ribs, and vagina. Shelton tied L.S. up and inserted an ice cube into her vagina and her anus. He also inserted a knife blade into her vagina. Shelton then placed a sock and underwear into L.S.'s mouth, taped her mouth

shut, and poured water into her nose. He also put a belt around her neck and penetrated her anus with his penis. Shelton repeatedly hit L.S. with the butt of his knife, and he cut her legs and buttocks several times. He then used a Dremel tool to burn her arm, and he shoved her onto the floor where she hit her head. As a result, L.S. was rendered temporarily unconscious. Shelton continued to kick, slap, and punch L.S. At around 9:00 p.m., Shelton's mother returned with Shelton and L.S.'s daughter, and Shelton "calmed down." Appellant's App. Vol. II at 24.

[4] The next morning, Shelton again "became furious," and he threatened and punched L.S. while L.S. was in bed with their daughter. *Id*. He then pressed L.S. against a wall, held a knife to her throat, and told her "it was time to die." *Id*. Shelton also told L.S. that the knife would be waiting for her when she returned from work. Shelton further told L.S. that he would kill L.S. and her family if she went to the hospital or called the police.

[5] At some point soon thereafter, L.S. went to the hospital and someone notified the police. After L.S. gave her statement, officers with the Evansville Police Department arrested Shelton and transported him to a confinement center. Once there, one of the officers searched Shelton and found a small plastic bag that contained eleven oxymorphone tablets as well as a folded five-dollar bill in his wallet that contained methamphetamine.

[6] The State charged Shelton with one count of rape, as a Level 1 felony ("Count I"); one count of attempted aggravated battery, as a Level 3 felony ("Count

II"); one count of criminal confinement, as a Level 3 felony ("Count III"); one count of rape, as a Level 3 felony ("Count IV"); one count of domestic battery, as a Level 5 felony ("Count V"); one count of possession of methamphetamine, as a Level 6 felony ("Count VI"); and one count of possession of a narcotic drug, as a Level 6 felony ("Count VII").

[7] Prior to the date of the trial, Shelton filed a notice of his intent to raise the defense of insanity and a request that he be evaluated to determine his competency. Thereafter, the trial court appointed two psychiatrists to evaluate Shelton in order to determine whether he was legally insane at the time he committed the offenses. Shelton reported to one of the psychiatrists that he had been under the influence of multiple illegal drugs at the time he committed the offenses against L.S. And he told both psychiatrists that he had used various illegal drugs, including methamphetamine, heroin, and opiates, as well as alcohol, on a daily basis since he was approximately thirteen years old. After both psychiatrists filed their reports,[1] the trial court concluded that Shelton was competent to stand trial. The court then scheduled a jury trial for March 12, 2018.

[8] On the morning of the scheduled trial, the parties filed a plea agreement. Pursuant to that agreement, the State agreed to dismiss Count VI, and Shelton

---

[1] One of the psychiatrists determined that Shelton was not insane at the time of the offenses. The other was unable to form a conclusion as to Shelton's sanity.

agreed to plead guilty to the remaining counts. That same day, the trial court accepted the plea agreement and dismissed Count VI.[2]

[9] On April 5, the trial court held a sentencing hearing. During the hearing, Shelton presented as evidence letters and testimony from friends and family in support of his character. And the State presented as evidence photographs of L.S.'s injuries that officers had taken at the hospital. In addition, the State presented the testimony of L.S.'s mother, who testified that, since the incident, L.S. has been "scared, broken, [and] crying." Tr. Vol. II at 22. L.S.'s mother further testified that L.S. has been having nightmares.

[10] At the conclusion of the hearing, the trial court entered judgment of conviction for Counts I, II, III, V, and VII.[3] At that time, the court found the following mitigating factors:

> The Court notes, as mitigating factors, that the defendant did plead guilty, again the day of trial, and we did have the jury here but he plead[ed] guilty before any evidence or any of the Court proceedings had started, and the Court notes that he did turn down a twenty[-]year offer the Friday before the trial. The defendant has no prior felonies, he does have a minor misdemeanor offense of Reckless Driving and Trespass. Now there is a prior Domestic Battery that was dismissed because the defendant completed the Domestic Abuse Intervention Program. The Court does find that it's the Court's belief that it is going to

---

[2] Shelton did not include a copy of the transcript from the March 12 change-of-plea hearing in his appendix.

[3] The court did not enter judgment of conviction on Count IV as it found that Count IV merged with Count I.

be a hardship on the dependent child of the defendant in this case, and the other family members that are here in Court today. The Court finds that . . . I do believe that this incident, part of it was a result of the defendant's substance abuse problems. The Court does feel that the defendant is remorseful.

*Id*. at 31-32 (omission in original). And the court identified as aggravating factors the fact that Shelton has a prior incident involving domestic violence and the nature of the offenses. Specifically, in finding the nature of the offenses to be an aggravating factor, the trial court found that "[i]t was a brutal incident, and it was an ongoing incident over numerous hours and, as the State mentioned, there was a time period when the minor child was present." *Id*. at 32.

[11] The trial court sentenced Shelton to thirty-five years for Count I, ten years for Count II, ten years for Count III, four years for Count V, and one and one-half years for Count VII. The trial court ordered those sentences to run concurrently for an aggregate term of thirty-five years in the Department of Correction. This appeal ensued.

# Discussion and Decision

## *Issue One:  Abuse of Discretion*

[12] Shelton first contends that the trial court abused its discretion when it sentenced him. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and

circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

[13] A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id*. (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind.), *clarified on reh'g other grounds*, 875 N.E.2d 218 (Ind. 2007)). However, "the relative weight or value assignable to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion. *Sandleben v. State*, 22 N.E.3d 782, 796 (Ind. Ct. App. 2014), *trans. denied*. Here, Shelton contends that the trial court abused its discretion when it failed to find certain mitigating circumstances and when it found certain aggravating factors.

*Mitigators*

[14] Shelton contends that the trial court abused its discretion when it failed to identify several mitigating circumstances.

> [A] finding of mitigating circumstances also lies within the trial court's discretion. The court need not state in the record those mitigating circumstances that it considers insignificant. And the

> trial court is not obligated to explain why it did not find a factor to be significantly mitigating. Nor is the sentencing court required to place the same value on a mitigating circumstance as does the defendant.

*Id*. at 796-97. Further, "'[i]f the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist.'" *Anglemeyer*, 868 N.E.2d at 493 (quoting *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993)).

[15] Shelton first asserts that the trial court failed to "actually consider Mr. Shelton's agreement to plead guilty to the charges against him." Appellant's Br. at 12. In other words, Shelton contends that the trial court abused its discretion when it omitted a mitigator that was clearly supported by the record. But the record reflects that the trial court did not fail to consider Shelton's plea agreement. Indeed, not only did the trial court consider his guilty plea, the court explicitly identified Shelton's guilty plea as a mitigating circumstance.

[16] Shelton next asserts that the trial court failed to "give sufficient consideration" to his lack of a substantial criminal history or his remorse as mitigating factors. *Id*. at 11. In essence, Shelton asserts that, while the trial court identified his lack of criminal history and his remorse as mitigating factors, the trial court did not give sufficient weight to those factors. But the court was not required to explain why it did not find those factors to be significantly mitigating, nor was the trial court required to place the same weight on the mitigating circumstances that

Shelton assigns to them. *Sandleben*, 22 N.E.3d at 796-97. Further, the relative weight that the trial court assigned to Shelton's criminal history and remorse is not subject to review for an abuse of discretion. *See id*. at 796. Thus, we cannot say that the trial court abused its discretion when it declined to find Shelton's lack of criminal history or remorse to be significant mitigating circumstances.

*Aggravators*

Rejection of Prior Plea Agreement

Shelton next contends that the trial court abused its discretion when it found as an aggravating factor the fact that he had rejected a prior plea agreement. During the sentencing hearing, the trial court twice mentioned that Shelton had rejected a prior plea agreement the Friday before trial, which started the following Monday. However, at no point did the trial court identify that as an aggravating factor, nor is there any evidence that the trial court used the fact that he had rejected a prior plea agreement to enhance his sentence. Indeed, the trial court first mentioned the fact that Shelton had rejected the prior plea agreement before it had entered judgment of conviction. And the court next mentioned the prior plea agreement at the same time that it identified his guilty plea as a mitigating factor. The only aggravators that the trial court identified were his prior offense involving domestic violence and the nature of the offenses. Because there is no evidence to indicate that the trial court identified Shelton's rejection of a prior plea agreement as an aggravating factor, the trial court did not abuse its discretion.

<u>Element of the Offense</u>

[17]     Shelton also contends that the trial court abused its discretion when it identified the nature of the offenses as an aggravator because it "used a material element" of the offenses as an aggravating circumstance. Appellant's Br at 13. "[A] material element of a crime may not be used as an aggravating factor to support an enhanced sentence." *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). But "when evaluating the nature of the offense, 'the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors.'" *Id.* (quoting *McCarthy v. State*, 749 N.E.2d 528, 539 (Ind. 2001)).

[18]     Here, while under the influence of illegal drugs, Shelton hit L.S., threatened to kill her, threw her into the shower, urinated on her, cut her hair, poured lighter fluid on her and threatened to light her on fire, choked her, repeatedly punched her, tied her up, put an ice cube in her vagina and anus, put a knife in her vagina, poured water into her nose while her mouth was taped closed, forced her to have anal sex with him while he had a belt around her neck, cut her body multiple times with a knife, hit her several times with the handle of the knife, burned her with a Dremel tool, shoved her head to the floor, held a knife to her throat, and threatened to kill her and her family if she went to the police. As a result of the offenses, L.S. sustained "tremendous bruising," had several cuts on her body, and was temporarily unconscious. Tr. Vol. II at 32. Further, the incident lasted for several hours over the course of two days. And, on the second day, Shelton and L.S.'s four-year-old child was present.

Those particular facts clearly go beyond the material elements needed to establish that Shelton committed rape, attempted aggravated battery, criminal confinement, domestic battery, and possession of a narcotic. Put another way, Shelton's conduct could have satisfied the statutory elements of the crimes without the offenses having been as brutal as they were. As such, we agree with the State that the trial court did not rely on the elements of the offenses but, rather, on the particularized facts of the crimes when it found that the crimes were "brutal." *Id.* The trial court therefore did not abuse its discretion when it identified the nature of the offenses as an aggravating circumstance.

### *Issue Two: Inappropriateness of Sentence*

Shelton next contends that his thirty-five year aggregate sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the

> sentence imposed by the trial court is inappropriate. [*Anglemyer*,
> 868 N.E.2d at 494].

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[21] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[22] Here, for his Level 1 felony conviction, his two Level 3 felony convictions, his Level 5 felony conviction, and his Level 6 felony conviction, Shelton faced a maximum possible term of eighty and one-half years. *See* Ind. Code §§ 35-50-2-4(b), -5(b), -6(b), -7(b) (2018). In imposing Shelton's sentence, the trial court found his guilty plea, his lack of a significant criminal history, the hardship on his child, his substance-abuse problems, and his remorse as mitigating factors. And the trial court found his previous incident of domestic violence and the

nature of the offenses as aggravating circumstances. In light of those findings, the court ordered Shelton to serve an aggravated sentence for each conviction. But the court then ordered those sentences to run concurrently, for an aggregate sentence of thirty-five years.

[23] Shelton concedes that "the nature of the offense[s] is reprehensible." Appellant's Br. at 15. But Shelton contends that his sentence is nonetheless inappropriate in light of the nature of the offenses because Shelton "admitted to heavily using drugs and alcohol at the time of the attack." *Id*. He further contends that his sentence is inappropriate because L.S. "did not write a letter or attend the sentencing" and because L.S.'s mother "testified that she wasn't necessarily asking for a long prison sentence but she wanted him to get help." *Id*. Thus, in essence, Shelton contends that, while the offenses were egregious, they were not sufficiently egregious to cause L.S. to testify or for L.S.'s mother to request a lengthy prison sentence.

[24] But L.S.'s decision not to testify and L.S.'s mother's decision not to ask for a lengthy sentence are not determinative. And whether the offenses could have been worse does not detract from the brutality of Shelton's conduct. Further, as detailed above, the nature of Shelton's offenses against L.S. are horrific. We cannot say that Shelton's thirty-five year aggregate sentence for his five felony convictions is inappropriate in light of the nature of the offenses.

[25] Shelton also asserts that his sentence is inappropriate in light of his character because he has no prior felony convictions and only one prior misdemeanor

conviction. He further asserts that his sentence is inappropriate because "[m]ultiple witnesses testified to [his] good character." *Id.* Be that as it may, Shelton has not provided compelling evidence portraying his character in a positive light. Shelton admitted to a long history of substance abuse for which he has not received treatment. And Shelton was under the influence of illegal substances during the instance offenses. Further, the fact that he brutally attacked his own wife over the course of two days to the point that she suffered numerous physical injuries and lasting psychological harm reflects poorly on Shelton's character. As such, we cannot say that Shelton's sentence is inappropriate in light of his character. We affirm Shelton's thirty-five year aggregate sentence.

[26]    Affirmed.

Pyle, J., and Altice, J., concur.